The Baptist Church at Lancaster *vs.* the Presbyterian    Case 25.
Church.

APPEAL FROM GARRARD CIRCUIT.                    PET. EQ.

1. One receiving a conveyance of property which has been dedicated
   to public use, will hold subject to that use.
2. Any person having an interest in the subject so dedicated may right-
   fully sue those having the legal title, to compel a performance of
   the trust according to the intent of the donor. (*Chambers vs. Bap-
   tist Ed. Society*, 1 *B. Monroe*, 220 )
3. Land was dedicated by the donor to all christian denominations ex-
   cept Roman Catholics and Shakers, as a burying ground and for
   religious purposes; a house of public worship was built by all de-
   nominations, and those not belonging to any: Held, that such
   denominations of christians as supplied themselves with other
   houses and places of worship, and abandoned the use of the prop-
   erty so dedicated and improved, had, for the time being, no right
   to sue for the enforcement of the trust, but a congregation having
   made no such provision still had the right to enforce a compliance
   with the object of the dedication.
4. One of the churches interested in the dedication receiving the title,
   made a lease for     years of the house erected for worship, in
   consideration of repairs then necessary to the use of the house:
   Held, it was equitable that the lessees should enjoy their lease for
   the time stipulated, not however to interfere with the use of the
   house by those who had not abandoned the use according to the
   purposes of the original dedication.

[The facts are set out in the opinion of the court.
REP.]

*A. A. Burton,* for appellants—

I submit that the evidence establishes beyond doubt
or controversy—

1. That the Church was built by voluntary dona-
tions—three-fourths of which, or more, were made
by persons who had made no profession of religion.

2. That it was the purpose, understanding, and
agreement of those who set on foot and carried out
the undertaking, and those who contributed the
means to build the church, and the lot upon which
it was built, as well as the understanding of the

whole community, that it should be the property of, and free for the use of, all religious denominations professing the christian faith—Roman Catholics and Shakers excepted—and the church-yard a burial ground for general public use.

3. That this understanding and agreement was committed to writing at the time, and signed by the contributors when they made their subscriptions.

4. That the church and yard were so used and claimed by different sects of christians and the public, from the time they were dedicated to the purposes named, in Nov. 1816, until shortly after the 7th Dec., 1849, when the trustees of the Presbyterian Church, without the concurr ence or knowledge of any other denomination, procured a deed from the heirs of Mrs. Pawling, (who had subscribed but had not conveyed the ground,) conveying it absolutely to that sect.

On this state of fact the appellants, the Baptist, Methodist, and Christian Churches, contend:

1. That the procurement of the deed by the Presbyterians was a fraud on the rights of other denominations and the public.

2. That Mrs. Pawling and her heirs were by her gift, in writing, the great lapse of time, and their continued acquiescence, divested of all right to the property; and the deed passed no exclusive right or title to the Presbyterians, but inured to the uses embraced by the original design of the gift.

3. That the long and uninterrupted and free use of the church and burial ground, by all denominations in common, and by the public, is conclusive against the right now set up by the Presbyterians.

4. Their claim is in violation of the terms upon which the church was built, and the purposes for which the lot was given.

5. The deed of the 7th December, 1849, to the Presbyterians, was in effect an ouster by them of all other denominations and the public; and notwithstanding they afterwards permitted others to worship

and bury there, still the deed is a denial of these privileges *as a right*, and which would in time ripen into a complete title in them to the exclusion of all other sects and the public. (6 *Bac. Ab., Bouvier's edition,* 369.)

6. That this action was maintainable by the appellants. (*Beatty vs. Kurtz,* 2 *Peters,* 577.)

7. And that the Circuit Court should have compelled the persons who thus procured and hold the title, to execute a conveyance or declaration of the uses for which the lot was given, and the house erected and dedicated.

A reversal is asked.

*Rice and J. F. Bell,* for appellees.

In behalf of the appellees we insist, that the judgment of the Circuit Court, dismissing plaintiff's petition, is without error to the prejudice of the plaintiffs, because—

1. It is not shown that the plaintiffs or any others,. either in their capacity as organized churches, or as separate individuals, had any right to maintain this action.

2. If they or any of them ever had such right it is not shown that they were ever obstructed in, or denied the enjoyment of, the use of the house in contest.

3. If the plaintiffs, or any of them, ever had any right to the use and enjoyment of the house, it was lost by abandonment and non-user.

The house was built in 1816, and by the whole proof is shown to have been abandoned by all of the various religious sects as a place of worship. The house became untenantable and ruinous; the fence around the lot on which the house was having fallen down, the grave yard was a grazing place for the cows and other stock of the town, and the house itself became only the place of shelter for the cattle and hogs during the nights, and was used for no other purpose, except occasionally wicked and depraved persons gathered there for the most infamous prac-

tises.   Under this condition of things the defendants, Landrum and others, made the contract exhibited, (p. 22,) and having repaired the premises, and made them tenantable by the expenditure of $250 or $300, this contract was made with the Presbyterian Church and their lessees, and such contract worked no injury or loss to the plaintiffs or any of them; for without the contract, or some such contract, the necessary repairs would not have been made, and very soon the house would have fallen down; such being the case, it was proper not to disturb the lessees, Landrum and others, in the enjoyment of their lease.

4. The depositions of John A. Lapsley and James C. Barnes, explain most fully, the manner and conditions of the subscriptions to the erection of the house, and of the uses to which it and the lot were dedicated.

From the whole proof it is inferable that the lot was given, and the subscriptions made, for the erection of a house of worship to be under the control of the Presbyterian Church in Lancaster, "free to the ' use of all creditable *preachers* of the protestant faith ' but Shakers, except upon such days as the church, ' now in existence in the town of Lancaster, shall ' have it in use."

The *only church* then existing in Lancaster was Presbyterian.

No creditable minister or preacher of the protestant faith ever was denied the right to preach in this house.   Until such denial no cause of action exists.

Again, no use was ever secured to any church whatever in its organized character, except the Presbyterian Church, under whose control the house and lot was to be.   (See *page* 96, *Lapsley's deposition*.)

We insist that these churches which now sue have no legal or equitable right whatever to the control of the title of the house and lot, and that hence they are not prejudiced by the deed made by Paulding's heirs to the Presbyterian Church.

Upon the whole case we ask an affirmance.

Judge DUVALL delivered the opinion of the court.

The testimony in this case establishes, beyond doubt, the following propositions :

1. That the lot of ground on which the house in controversy stands was given and dedicated, about the year 1815, by Mrs. Susannah Pawling, to and for the use of the general public as a burying ground, and to and for the use of all religious denominations professing the christian faith—Roman Catholics and Shakers excepted.

2. That a house for public worship was soon after built on the lot so dedicated, by means of contributions from individuals belonging to the various denominations or sects of protestant christians, and from individuals belonging to no sect or church, for the uses and purposes contemplated by the original dedication.

3. That the house and yard were so used and claimed by the different sects of christians from the time of the dedication until within two or three years before the institution of this suit.

4. That at or about the period last mentioned the Presbyterian, Baptist, and Christian denominations had each provided themselves with suitable houses of worship, and had voluntarily abandoned and ceased to use the house in contest as a place of worship, or for any other purpose within the terms or objects of the dedication.

5. That in the month of February, 1853, the house being greatly out of repair, so much so as to be wholly unfit for use, the trustees of the Presbyterian Church, (who had received a conveyance of the title to the property from the heirs at law of the donor,) entered into a contract with Landrum, Letcher, and others, by which the latter agreed to repair the house in the manner stipulated, in consideration of which a lease of it was granted them for seven years from the date of the agreement, to be used by them as they might think proper, subject to certain restrictions specified in the written agreement.

6. That the Methodist. Episcopal .Church of Lancaster have not built or provided themselves with any other house of worship, and have not abandoned the use of the house in contest, but, by reason of its dilapidated condition, as just described, they were compelled to discontinue their occupancy of it as a house of worship, and were unable to agree with other parties interested, on the terms upon which they were willing to incur the expense of repairing the building.

Upon the foregoing facts the question arises, what

1. One receiving a conveyance of property which has been dedicated to public use, will hold subject to that use. were the rights of the several parties, touching the subject matter of this controversy at the time the action was instituted? In the solution of this question we shall not deem it necessary to go into the doctrine of charities and charitable uses, further than to apply to the case before us a few general principles, long established, and repeatedly sanctioned by former adjudications of this court in similar cases.

It appears that the donor, Mrs. Pawling, had not, in her lifetime, divested herself of the legal title to the property in contest, and she therefore, whilst living, as well as her heirs at law since her death, must, in equity, be regarded as holding the legal title in trust for the purposes contemplated by the gift or dedication.

Now it cannot be doubted that the donor herself, or her heirs since her death, might have instituted a proceeding in equity for the enforcement of this trust. But in the month of December, 1849, her heirs at law conveyed, by deed, to the "Trustees of the Lancaster Presbyterian Church," the lot of ground and appurtenances, for the exclusive use and benefit of the Presbyterian Church in Lancaster. Under that conveyance the grantees have ever since claimed to hold the property as the sole and exclusive owners thereof, and the grantors were of course estopped to controvert that claim, or to assert a right to have the trust executed according to what the proof shows to have been the true interest and object of the donor.

Under these circumstances any beneficiary, having an interest in the use, or an interest in the subject of the gift, had an unquestionable right to institute a proceeding in equity for the purpose of securing a faithful execution of the beneficent objects of the founder of the charity. (*Chambers vs. Baptist Education Society*, 1 *B. Mon.* 220.) And in that case it was held, that "if the founder be dead, without heirs or ' representatives, and no beneficiary, *for the time be-* ' *ing having a vested interest in the use,* there would be ' no person who could institute such proceeding;" and that it might, for that reason, be prosecuted in equity, in the form of an information, by or in the name of the Attorney General.

It is clear, therefore, that the "Methodist Episcopal Church, South, at Lancaster," was a beneficiary, having a present subsisting interest in the church property, and in its use at the time of the commencement of this action, and had an undoubted right to maintain it, and to the relief sought by it.

But the attitude of the other parties, with respect to this property, was essentially different. The Presbyterian, Baptist, and Christian denominations had each, as already stated, built houses of their own, sufficient and suitable for all the purposes of their respective congregations. They used no other building since the completion of their own, and required the use of none other. Their voluntary abandonment of the house in contest was an implied, though unequivocal renunciation of their right to its use, and operated as effectually to divest the right they had acquired, under the original donation, as if such renunciation had been expressed in the most solemn form. As to them the purposes of the trust had been accomplished, for the time being at least. It might be, and we would not be understood as deciding otherwise, that those societies would be entitled to resume their right to the common use of the building for the purpose of religious worship, in the event of the loss of their own houses, or, indeed, up-

BAPTIST CHURCH
*vs.*
PRESBYTERIAN CHURCH.

2. Any person having an interest in the subject so dedicated may rightfully sue those having the legal title, to compel a performance of the trust according to the intent of the donor. (*Chambers vs. Bap. Ed. Soc.* 1 *B. Mon.* 220.)

3. Land was dedicated by the donor to all christian denominations except Roman Catholics and Shakers, as a burying ground and for religious purposes, a house of public worship was built by all denominations, & those not belonging to any: Held, that such denominations of christians as supplied themselves with other houses and places of worship, and abandoned the use of the property so dedicated and improved, had, for the time being, no right to sue for the en-

BAPTIST CHURCH
*vs.*
PRESBYTERIAN
CHURCH.

forcement of the trust, but a congregation having made no such provision still had the right to enforce a compliance with the object of the dedication.

on the happening of any other contingency which might render such use necessary or appropriate to their altered circumstances. But it is clear, that in view of the facts stated, neither of them had, at the commencement of this action, any such interest in the building or in its use as would authorize them to maintain a proceeding for the enforcement of the trusts provided for by the terms of the dedication. So far as the Baptist and Christian Churches of Lancaster are concerned it follows that the circuit court did not err in dismissing the petition.

It was not essential to an equitable adjustment of this controversy, that the conveyance from the heirs of Mrs. Pawling to the trustees of the Presbyterian Church should have been declared void. Some suitable depository of the legal title was not only proper but necessary, and should have been provided by the chancellor, if there had been none. According to the view we have taken, the only legitimate effect of that conveyance was to invest the grantees with the naked legal title, to be held by them upon the trusts and for the purposes already mentioned. The claim set up by them, under the deed, to the exclusive property in, and dominion over, the ground and building, was inconsistent with those purposes and trusts, and should have been disallowed. As mere trustees they are of course subject, at all times, to the jurisdiction and control of the chancellor, and responsible to any party interested as a beneficiary, for any violation of, or failure to perform their duties as such.

4. One of the churches interested in the dedication receiving the title, made a lease for years of the house erected for worship, in consideration of repairs then necessary to the

The contract or lease under which the appellees, Landrum, Letcher, and others, claim, should not be disturbed. They, in good faith expended their money in making such repairs as were actually necessary to the preservation of the building, and their occasional use of it, for the purposes stipulated, cannot be regarded as inconsistent with the rights of others. No sufficient reason is shown why they should not be permitted to enjoy the privi-

leges they acquired under the lease, until the expiration of their term—those privileges to be exercised, however, in a manner not inconsistent with the primary and leading objects of its dedication as a house for christian worship.

The judgment is therefore reversed as to the appellant, the "Methodist Episcopal Church, South, of Lancaster," and affirmed as to the other appellants, and the cause remanded for further proceedings and judgment in conformity with the suggestions and principles herein set forth.

useof the house: Held, it was equitable that the lessees sho'd enjoy their lease for the time stipulated, not however to interfere with the use of the house by those who had not abandoned the use according to the purposes of the original dedication.