## Cumming *et, al. vs.* The Trustees of the Reid Memorial Church.

The fourteenth item of testator's will was as follows: "My house and lot on the north side of Walton Way, in the village of Summerville, near Augusta, I give and bequeath, in *fee simple,* to James W. Davies, Thomas W. Coskery, and Jonathan S. Wilcox, of Summerville, *in trust,* that they and their successors allow to William Berrien, hereinbefore mentioned, to occupy, free of rent, during his natural life, the piece of ground at the northwest corner of said lot, known as the 'Potato Patch,' and to remove on to said piece of ground, for his use during life, the building on said lot known as 'Violet's House.' Said lot is supposed to contain about five-eighths of an acre, known as the 'Potato Patch.' I desire the above named James W. Davies, Thomas W. Coskery, and Jonathan S. Wilcox, to obtain for themselves and their successors, a decree of incorpora-

Cumming *et al. vs.* The Trustees of the Reid Memorial Church.

tion, as trustees of a Presbyterian church in connection with the present general assembly of the Presbyterian church in the southern states; and hold the western portion of the lot hereby bequeathed to them, to-wit: one hundred feet in breadth, from the western line, as a church lot; the remainder of the entire lot, with its appurtenances and improvements, except 'Violet's House,' above mentioned, they are directed to sell in the manner and on the terms they deem expedient, and are authorized to fully convey the same in *fee simp'e*. With the proceeds of said sale, I direct them, or their successors, to build a church of the Presbyterian denomination aforesaid, in the church lot hereinbefore provided for. The plan and style of said building is necessarily left to the discretion of the trustees. But I recommend, if the means be sufficient, that it be of brick, well but plainly finished, with a basement for a Sunday-school room."

The will was dated on the 31st of July, 1869, and on the same day the following codicil was executed: "I desire Porter Fleming to be an additional trustee under the clause in the foregoing disposing of my house and lot in Summerville."

On April 2, 1870, a third codicil to the will was executed, confirming and republishing the same, the third item of which was in the words following, to-wit: "I desire George M. Thew and William A. Walton to be additional trustees under the clause in said will disposing of my house and lot in Summerville; and to the entire board of trustees for the erection of the church in said will provided, I give and bequeath further the sum of eight thousand dollars, should the residuum of my estate amount to so much."

On July 25, 1872, a fourth codicil was executed, the seventh item of which was in the words following, to-wit: "Jonathan S. Wilcox, one of the trustees appointed in said will for my house and lot in Summerville, having departed this life, I appoint Lindsay C. Warren as trustee in his room, with all the rights and powers given to said Jonathan S. Wilcox by said will."

On July 14, 1875, the sixth and last codicil was executed, as follows, so far as relates to this case: "Should my estate not be able to pay off in full all legacies specified in this my last will and testament, including the eight thousand dollars bequeathed to the church to be erected in Summerville, and all other expenses, I now revoke so much of said eight thousand dollars as may be necessary to accomplish said object, as my desire is to pay off all legacies in full." "Mr. Henry Moore, an additional trustee to the church to be erected in Summerville."

The following memorandum was found among the papers of the testator, and entered of record by the ordinary, and attached to the bill as an exhibit with the will and codicils: "My desire is that the church building to be erected in Summerville, shall be placed back

Cumming *et al. vs.* The Trustees of the Reid Memorial Church.

from Walton Way at a sufficient distance so as not to obstruct the view from my residence west, say from 75 to 80 feet, or more if deemed necessary by the trustees to place it thus far from Walton Way to effect that object. As regards said church building, should the trustees deem it advisable not to build it two stories in height, they are authorized to build it but one story high, pitched similar to the church in Augusta called the 'Christian Church,' the roof to be covered with XX tin, and, in time, the house called 'Violet's House' can be removed in rear of same, added thereto in length, and converted into a Sunday-school room. My desire is the church shall be occupied or used for church purposes exclusively. Taking off 100 feet on Walton Way for the church lot, there ought to remain to dwelling lot 500 feet front on Walton Way, including one foot more on the street leading to the cemetery, to which it is entitled. It is my desire that the church should be named 'The Louise Reid Presbyterian Church,' or 'The Reid Memorial,' but if the trustees deem it not a suitable name, or proper, it is left with them and my executors to name it." This memorandum is dated July 19, 1872.

On demurrer to the bill, filed by the next of kin to the testator, setting out the foregoing facts, and alleging that the house and lot had been turned over to the trustees and sold for $9,400.00, with which they had completed the church edifice, and that the executors had also turned over the sum of $8,000.00 to the trustees, no part of which had been applied by them to the erection or completion of the church building, and praying for discovery touching the use by the trustees of said $8,000.00, and for account and payment to said complainants of said sum, or such part thereof as had not been expended in the matter of erecting and completing the said church building, on the ground that, by the said will and codicil, the said $8,000.00 was bequeathed to said trustees solely to be used by them in the erection and completion of said church edifice, and not having been so used, they held the same in trust for the complainants as testator's next of kin, there being no residuary legatees in said will designated:

*Held* 1st. That even if the memorandum was improperly admitted to record by the ordinary, yet it is such a paper as may be used, like other surrounding circumstances, to aid in the construction of ambiguous clauses of the will on the same subject matter, and being exhibited to the bill in connection with the will and codicils, the memorandum may be considered on demurrer in construing the will and passing upon complainants' case as made by themselves.

*Held* 2d. That the testator's intention, gathered from the whole will and all the codicils bearing upon the bequest of $8,000.00, and read with the additional light thrown upon it by the memorandum, was to give the said sum absolutely to the said trustees to be used and expended by them as they might see fit, not only in erecting

7

and completing said church edifice, but in adding thereto, in keeping it in repair, and in sustaining and preserving the church in perpetual memory of his wife and himself; and that therefore the complainants have no equitable interest in said fund, and the demurrer to their bill was rightfully sustained and the bill properly dismissed.

Wills.   Legacies.   Evidence.   Before Judge SNEAD. Richmond Superior Court.   April Term, 1879.

Reported in the opinion.

M. CUMMING, for plaintiffs in error.

JONES & EVE, for defendants.

JACKSON, Justice.

This bill was brought by the heirs at law of the testator to recover $8,000.00, or so much thereof as had not been expended by the defendants in erecting and completing a church edifice in the village of Summerville, and county of Richmond.   A demurrer thereto was filed substantially on the ground that the complainants had no equitable interest in said fund, and were not therefore entitled to ask discovery in regard thereto or any accounting thereabout by the trustees of said church.   The court below sustained the demurrer, and the complainants excepted.

There were no residuary legatees named in the will, and the complainants allege that the bequest of the testator to the trustees of this sum of money was made solely to be used by them in erecting and completing a church edifice, that the church building had been furnished by another fund provided therefor without the aid of this fund, and that these complainants, no residuary clause being in said will, were, by virtue of being next of kin and heirs at law of the testator, the beneficiaries of the fund, that the trustees having possessed themselves of it and not needing it for the uses declared in the will, held it in trust for complainants,

and must account to them therefor. On the other hand the defendants maintain that the bequest to them is absolute—not confined to the use only of building the church, but of preserving and sustaining it as a memorial church in memory of testator's name and bounty.

So that the point at issue is this: does the will give the trustees this fund alone to complete the erection of the church edifice, or does it give the fund in the wider sense and for the broader use of preserving and sustaining it as a place for the worship of God? Or to put it more broadly still: is the fund given as a building fund only, or is it given absolutely to these trustees for the use of this church as a body corporate—in adding to the edifice, if necessary, in repairing the building from time to time, in sustaining the church as a worshiping congregation, and thus preserving this house of worship in perpetual memory—so far as human things can perpetuate memory—of the testator's bounty and of his name?

The question has been discussed with rare ability, and all the light which research and learning and talent can throw upon a point has been shed upon it. At last, however, the question is, what was the intention of the testator in respect to this fund—for his will is the law that must rule the use of this fund, and his intention with respect to it is his will. All the rules in the books are mere adjuncts to strengthen —mere props to support this fundamental rule. On this corner stone the entire fabric rests, and that which it does not sustain falls, or may be rejected as mere scaffolding.

To ascertain this intention, the whole will, with all the codicils which bear at all on the bequest, will be considered ; and if there be still any ambiguity as to the will, or which is the same thing, as to the desire or intention of the testator touching the use of this money, surrounding circumstances, cotemporaneous facts, written memoranda duly authenticated, may all be invoked to see what the testator meant.

This case is before us on demurrer, and nothing can be

considered here, of course, except that which appears in the bill of complainants; but all the exhibits made thereto are parts of the bill and to be considered on demurrer in connection therewith.

The fourteenth item of the will makes the first allusion to the desire of the testator in respect to this church. It is as follows:

"My house and lot, on the north side of Walton Way, in the village of Summerville, near Augusta, I give and bequeath, in fee simple, to James W. Davies, Thomas W. Coskery, and Jonathan S. Wilcox, of Summerville, *in trust,* that they and their successors allow to William Berrien, hereinbefore mentioned, to occupy, free of rent, during his natural life, the piece of ground at the northwest corner of said lot, known as the 'potato patch,' and to remove on to said piece of ground, for his use during life, the building on said lot known as 'Violet's House.' Said lot is supposed to contain about five-eighths of an acre, known as the 'potato patch.' I desire the above named James W. Davies, Thomas W. Coskery, and Jonathan S. Wilcox, to obtain for themselves and successors a decree of incorporation, as trustees of a Presbyterian church in connection with the present general assembly of the Presbyterian church in the southern states; and hold the western portion of the lot hereby bequeathed to them, to-wit: one hundred feet in breath, from the western line, as a church lot; the remainder of the entire lot, with its appurtenances and improvements, except 'Violet's House' above mentioned, they are directed to sell in the manner and on the terms they deem expedient, and are authorized to fully convey the same in fee simple. With the proceeds of said sale, I direct them or their successors, to build a church of the Presbyterian denomination aforesaid, in the church lot hereinbefore provided for. The plan and style of said building is necessarily left to the discretion of the trustees. But I recommend, if the means be sufficient, that it be of brick, well but plainly finished, with a basement for a Sunday-school room."

On the same day the following codicil was executed, July 31st, 1869.

"I desire Porter Fleming to be an additional trustee under the clause in the foregoing disposing of my house and lot in Summerville."

On April 2, 1870, a third codicil to the will was executed, confirming and republishing the same, the third item of which was in the words following, to-wit:

"I desire George M. Thew and William A. Walton to be additional trustees, under the clause in said will disposing of my house and lot

Cumming *et al. vs.* The Trustees of the Reid Memorial Church.

in Summerville; and to the entire board of trustees for the erection of the church in said will provided, I give and bequeath further the sum of eight thousand dollars should the residuum of my estate amount to so much."

On July 25, 1872, a fourth codicil was executed, the seventh item of which was in the words following, to-wit:

"Jonathan S Wilcox, one of the trustees appointed in said will for my house and lot in Summerville, having departed this life, I appoint Lindsay C. Warren as trustee in his room, with all the rights and powers given to said Jonathan S. Wilcox by said will."

The foregoing will and codicils were written, the bill states, with the assistance of counsel learned in the law.

On July 14, 1875, a sixth and last codicil was executed It was written by the testator, without the assistance of counsel, on the back of his will. So much of it as relates to the present case is in the words following, to-wit: .

"Should my estate not be enabled to pay off in full all legacies specified in this my last will and testament, including the eight thousand dollars bequeathed to the church to be erected in Summerville and all other expenses, I now revoke so much of said eight thousand dollars as may be necessary to accomplish said object, as my desire is to pay off all legacies in full."

"Mr. Henry Moore an additional trustee to the church to be erected in Summerville."

On the 19th of July, 1872, a memorandum was made by the testator, which was found by the executors among his private paper, and admitted to record by the ordinary, and which appears annexed to the bill and exhibited with the will and codicils, which is as follows, so far as it bears on the point at issue :

"My desire is that the church-building to be erected in Summerville shall be placed back from Walton Way at a sufficient distance so as not to obstruct the view from my residence west, say from 75 to 80 feet, or more, if deemed necessary by the trustees to place it thus far from Walton Way to effect that object.

"As regards said church-building, should the trustees deem it advisable not to build it two stories in height, they are authorized to build it but one story, high-pitched, similar to the church in Augusta, called the Christian church, the roof to be covered with xx tin, and, in time,

the house called *Violet's House* can be moved in the rear of the same, added thereto in length, and converted into a Sunday-school room.

"My desire is the church shall be occupied or used for church purposes exclusively. Taking off 100 feet on Walton Way for the church lot, there ought to remain to dwelling lot 500 feet front on Walton Way, including one foot more on the street leading to the cemetery, to which it is entitled.

"It is my desire that the church should be named the 'Louise Reid Presbyterian Church,' or the 'Reid Memorial,' but if the trustees deem it not a suitable name, or proper, it is left with them and my executors to name it."

This memorandum is dated July 19, 1872.

1. Whether this last paper was properly admitted to record or not it is unnecessary that we decide. It is enough that the memorandum was found among the papers of the testator, that it bears a date intermediate the execution of the will proper, and the codicils thereto bearing upon this church. That renders it such a cotemporaneous circumstance as makes it proper for consideration to throw light on the true intention of the testator in the bequest, the same being somewhat ambiguous and capable of two constructions. The memorandum is in the record; it is referred to in the sixth codicil of the will; it is certified to by the ordinary with the other papers, to-wit: the will and codicils, and if the others were exhibited, about which there seems to be no dispute, this memorandum so embraced in the certificate of the ordinary and spread out after the bill, would seem to be also in the same exhibit. On the demurrer to the bill, which embraces all that is attached thereto in any exhibit, we think it legitimate to consider the memorandum in so far as it may throw light upon the mind of the testator in regard to this bequest.

2. So considering these several clauses of the will altogether and the memorandum, it seems reasonably certain that the testator had in view not only the erection but the preservation as a place of worship of this church. It was to be a Reid memorial church. It was to be so named to carry his name to posterity, or that of Louise Reid, presumed to be his deceased wife. The preservation of the

church, therefore, must have been in his eye as much as its erection. Looking at it merely as a place, a building, it must decay. The paint would grow old and faint, and need renewing; and the house itself would need repair. Besides, by the memorandum, on a contingency, an addition was to be made to it by adding a certain house for a Sunday-school room, and that house was to be lengthened. All these things would require money after the building itself, as to its main structure, was completed; and it assuredly comports with the nature of the original bequest and all the codicils that funds be set apart for this purpose.

The very fact that in the original item the trustees were required to have themselves *and their successors* incorporated, corroborates the correctness of the view we take of the permanent nature of the memorial of himself had in his eye by the testator. Not only so, but the character of the church, its connectional or denominational relations, was in the mind of the testator, and the form and mode of worship therein. It was to be a Presbyterian church; it was not to be independent, but "connected with the present general assembly of the Presbyterian church of the southern states." So that in the original will, not the mere erection of a house of worship was in the testator's mind, but the sort of worship therein was a big idea with him. The bequest, and all that bears thereon, breathes a spirit of devotion to the Presbyterian doctrine of faith and mode of worship; so that even if all the proceeds of the house and lot had not been expended in the building, it would not require much stretching to cover with the intention of the testator the sustentation as well as the erection of the church.

But when the codicil with the specific bequest of $8,000.00 comes to be considered, the intention becomes clearer. After naming certain additional trustees "under the clause in said will disposing of my (his) house and lot in Summerville," he adds, "and to the entire board of trustees for the erection of the church in said will provided, I give and bequeath further the sum of $8,000.00 should the

residuum of my (his) estate amount to so much." The words "for the erection of the church in said will provided" are descriptive of the persons before named in the will and codicil. It was necessary either to name each of them over again, or to use some general words embracing them all in a single phrase; because he was about to make them a large bequest.

Further, the last codicil is still stronger in favor of the construction we put on the will. There the testator calls the $8,000.00 a legacy. He says, "should my estate not be enabled to pay off in full all legacies specified in this my last will and testament, including the $8,000.00 bequeathed to the church," etc., thus by implication terming this bequest a legacy. It is true that in the latter part of the clause he expresses a desire to pay in full all legacies at the expense of this bequest, and would seem therein to nullify such use, by implication, of the word before; but the bill alleges that this was written without the aid of counsel, and we may expect some inaccuracy of language. In this clause he is revoking enough of this $8,000.00 fund to pay in full other specific legacies. If it had been his purpose not to give this $8,000.00 except to aid in the church building, this would have been the place to say so. He was here considering how to pay in full divers legacies; and to that end was revoking part of this bequest. Had he meant to confine this to building, he would here have said, should the proceeds of my house and lot suffice to build the church without this fund, then I revoke this and direct it applied to the other legacies.

Again, if this had been designed as a building fund, because the proceeds of the house and lot would not suffice to complete the church without it, would the testator have turned any part of it over to legacies to strangers, and leave the church unfinished? We think not. This church was the main thought in his mind. To complete the edifice he gave the house and lot. It was to be two stories or

one, as the proceeds of that house and lot held out. Then $8,000.00, or so much thereof as was a residuum after paying other legacies, was to go to this church, to be used to keep it up, to repair it, to sustain it, to keep it in existence—a living church where the worship of God after the Presbyterian faith, doctrine and usage, was to be perpetuated for generations, and the name of the founder, if the trustees and executors did not deem it inappropriate so to connect his name with a place where God was to be worshipped, was to be held in respect by those who worshipped in its pews and preached from its pulpit.

Note further this last codicil in this respect, to-wit: the words " bequeathed to the church to be erected," evidently to it as a body corporate; otherwise he would have said naturally "bequeathed for the erection of the church." He does not even say to the trustees, but to the church, which was by prior direction to be incorporated.

And note further, in the third codicil the words, " should the residuum of my estate be sufficient," then this fund is given, thereby making the gift turn on anything being left, and treating this church as a sort of residuary legatee.

Some criticism has been made upon the other codicils appointing additional trustees, and the language used in them, and great acumen has been displayed in distinguishing these from the last—especially as they were written by a lawyer, this by the unskilled testator; but we do not think it sufficient to set off against the broader view we take of the will in its entirety, and the evident intention of the testator to be gathered from it and all the codicils and the memorandum.

We think, therefore, that the intention of the testator was to give this money to these trustees, to be used by them in and about the adding to, repairing, replenishing, re-carpeting, re-cushioning this church, as it should need corporeally such embellishment, and in sustaining therein the worship of Almighty God, according to the Presbyterian mode, and in connection with the general assembly of

that church south; that the complainants, therefore, have no equity in their bill whereby to call the trustees to account or discovery; and that the court below was right to sustain the demurrer, and to dismiss the bill.

Judgment affirmed.