## HARRIS *v.* BROWN *et al.*

1. Where the owners of a lot of land conveyed it to certain named persons "and their successors in trust for the purposes hereinafter mentioned and declared," to have and to hold to them "and their successors in office forever in trust; that they shall erect and build or cause to be

built thereon two academies or seminaries, and also to build a house or place of worship for the use of the members of the Methodist Episcopal Church; and in further trust that in case of vacation, by death or otherwise, of a trustee or trustees, the vacancy shall be filled by the proper authority by another trustee or trustees as the case may be," such a conveyance created a continuing trust for educational and religious purposes.

2. Such a trust is the subject of equitable jurisdiction; and if the original trustees named in the deed are no longer in existence, the superior court exercising equitable jurisdiction will appoint successors, upon application of any person authorized to bring the action.

3. Under the facts of this case, neither the trustees of the Methodist Episcopal Church nor the trustees of the Fort Valley Male and Female Academy are shown to be the successors of the original trustees, lawfully appointed.

4. One who owns a residence lot abutting on the land covered by the trust is not for that reason a beneficiary of the trust or authorized to file a proceeding to have trustees appointed and the trust protected.

5. A woman who alleges that she is a citizen and taxpayer of the town and county in which the land covered by the original trust deed is located does not thereby show a sufficient interest in the trust to authorize her to file an equitable petition for the purposes stated in the last note.

6. A member of the Methodist Episcopal Church of the town in which the land was situated, and which occupied the church building erected on the lot, had such an interest in the trust as authorized her to file an equitable petition to have trustees appointed and to enjoin an unauthorized sale of the property by the church authorities. Whether a sale by proper trustees will be authorized by the court is not decided.

7. A purchaser from a trustee, with notice actual or constructive of the trust, holds as trustee for the beneficiaries.

8. Where two sets of trustees claim to be acting under a deed which created a trust, a deed from one of them to the other will not operate either as title or color of title as against the common trust.

Argued July 1,—Decided November 20, 1905.

Petition for injunction. Before Judge Fulton. Houston superior court. May 31, 1905.

On August 22, 1836, Matthew Dorsey and James A. Everett conveyed to Hardy Hunter and eight other persons named, "and their successors in trust for the purposes hereinafter mentioned and declared," certain described lands in the county of Houston, containing six acres more or less, "to have and to hold the above-described lot or piece of land unto the said [persons named] and their successors in office forever in trust; that they shall erect and build or cause to be built thereon two academies or seminaries, and also to build a house or place of worship for the use of the members of the

Methodist Episcopal Church; and in further trust that in case of vacation, by death or otherwise, of a trustee or trustees, the vacancy shall be filled by the proper authority with another trustee or trustees as the case may be." The makers of the deed warranted the title to the persons named "and their successors in trust forever in fee simple." A schoolhouse was erected on the property, and also a church building for the use of the members of the Methodist Episcopal Church. Some of the trustees named in the deed were members of the Methodist Church and some were Baptists, and they had no official connection with the Methodist Episcopal Church. In some way, not very clearly indicated by the evidence, certain persons styling themselves trustees for the Fort Valley Male and Female Academy were in possession of the school building and managing it as if they were trustees for the educational use. The trustees appointed by the conference of the Methodist Church were managing the interest of the church. It is not clearly disclosed what became of the original trustees under the deed, but presumably from the long lapse of time they are all dead. No successors were ever appointed for them by the court, so far as the evidence shows. Prior to August, 1882, the school trustees removed the school to another location not on the land involved in the controversy, and the building was sold and torn down; and at the date just mentioned a conveyance was made which purported to be from a number of persons as "trustees of the Fort Valley Male and Female Academies, of said State and County," to certain other persons as "trustees of the Methodist Episcopal Church South at Fort Valley." The consideration named was $50, and it purported to quitclaim the land involved in this litigation. It was signed by "William I. Green, Pres.; A. C. Riley, Sect." The trustees of the Methodist Church claim that since said deed they have held entire and exclusive possession of the property. About three years ago the Methodist Church was removed from its location on this property to another place in the town of Fort Valley. Recently, under authority from the quarterly conference and with the consent of the preacher, the trustees of the church have proceeded to divide up the property into lots for the purpose of offering them for sale. The plaintiff, alleging herself to be a citizen and taxpayer of the town of Fort Valley in which the property is located, and owner of a residence lot fronting on the property which is referred to as a

.square, and also a member of the Methodist Episcopal Church South of Fort Valley, filed her equitable petition for the purpose of .enjoining the church trustees from dividing or selling the property in lots, from closing certain streets which she claimed existed on the property, from removing the trees upon it, and from interfering with the public use and enjoyment of the square as an open public :square. She also prayed that the court would appoint trustees to hold the property and to conserve and carry out the uses and purposes of the trust; and for general relief. The defendants denied that the plaintiff was entitled to injunction, but contended that they had the title to the property and the right to bring it to sale. On hearing the application for injunction the presiding judge refused it, and plaintiff excepted.

*N. E. & W. A. Harris*, for plaintiff.
*H. A. Mathews* and *J. H. Hall*, for defendants.

LUMPKIN, J. (After stating the facts.) 1-3. The deed of Dorsey and Everett created a trust of a dual character, educational and religious. Clearly it was not their intention for the trust to terminate upon the building of the academies and the church. The conveyance was to the persons named as trustees and their successors, to have and to hold to them "and their successors in office forever in trust;" and it was declared that in case of a vacancy in any trusteeship, it should be filled by "the proper authority." These expressions in the deed, as well as the general character of the trust created, negative the idea that the grantors intended for it to terminate as soon as the houses were built. The deed created a continuing charitable trust, for the two purposes mentioned. *Beckwith* v. *St. Philip's Parish*, 69 *Ga.* 574; *Thompson* v. *Hale*, 123 *Ga.* 305. A consideration of $10 is recited; but the evidence indicates that it was a deed of gift, and it has been so treated in the argument. Such a trust is peculiarly a subject of equitable jurisdiction. Civil Code, §§ 4006-4008. "A charity once inaugurated is always subject to the, supervision and direction of a court of equity, to render effectual its purpose and object." Civil Code, § 4009. A trust will not be permitted to fail for want of a trustee. Civil Code, § 3197. While courts are reluctant to interpose in questions affecting the management of the temporalities of a church, yet, if property is devoted to a specific doctrine or purpose, the

courts will prevent it from being diverted from the trust. Civil Code, §2362.

Had this trust been for the church only, section 2353 of the Civil Code (codified from the act of 1805, which was in force when the deed was made) would have been directly applicable. It declares that land conveyed to a church or its trustees for the purpose of erecting a church or meeting-house "shall be fully and absolutely vested in such church or religious society, or in their respective trustees, for the uses and purposes in said deed expressed; to be holden to them, or their trustees, for their use by succession, according to the mode of church government, or rules of discipline exercised by such churches or religious societies respectively." If, therefore, the only use specified in the deed had been the erection of the church, the trustees of the Methodist Episcopal Church, chosen according to its method of church government, would be held to be the proper successors of the original trustees. But the trust was for an educational as well as a religious purpose; and therefore the act referred to did not control it. That act does not say that where a trust is created for both a church and an academy, the trustees of the church alone shall take the entire title. The original trustees appear to have died. At some time in the past, certain persons styling themselves "trustees of the Fort Valley Male and Female Academy" held possession of the academy on this property. Who elected or appointed them, or how they claimed to be successors of the original trustees under the deed, does not appear. The usual trustees chosen by the Methodist Church according to its form of government to hold and manage its property seem to have exercised control over what was considered the interest of the church. Thus the trust property was being held by two sets of trustees, neither being the original trustees nor successors shown to have been legally appointed. The deed creating the trust declares that vacancies shall be filled by appointment "by the proper authority." In the absence of any other provision as to the mode of succession, a court of equity was the proper authority, or, under our system, the superior court exercising equitable power, on proper application therefor.

4. If the trust stands without lawful trustees to administer it, the next question which presents itself is whether the plaintiff is authorized to apply to have trustees appointed and to have the trust protected. She claims the right to do this on three grounds. The

first is, because she owns a lot abutting on the square or tract of land covered by the trust. In this capacity she has no standing in court. The trust was not created for the benefit of adjacent-lot owners, nor was the dedication by the grantors for a public park or playground. No such intention is expressed in the deed, nor is there any evidence that they sought at any time to impress such a use upon the land; nor could they have done so after having parted with the title to it and dedicated it to another use. Whether the town of Fort Valley acquired any rights in regard to streets, or to maintain its water pipes on certain portions of the land, the evidence is conflicting, and the presiding judge did not abuse his discretion in dealing with it. There was much evidence introduced for the purpose of showing that certain streets claimed to exist were mere irregular and undefined pathways or roadways crossing a vacant lot, and not established or fixed roads or streets. Whether or not certain streets have been established, it seems quite clear that the property has not been divested of the educational and religious trust and become a public park.

5. The next ground on which the plaintiff contends that she is entitled in equity to the relief prayed by her is that she is a citizen and taxpayer of the town of Fort Valley and of the county of Houston, in which it is located. In *Thompson* v. *Hale,* supra, the proceeding was brought by certain persons who were patrons of the academy for whom it was sought to appoint trustees, as well as residents and taxpayers of the town in which it was located. In the opinion Mr. Justice Evans says: "The beneficiaries under the deed are not the trustees, but all the persons living in the locality of the school who might avail themselves of its educational advantages and opportunities." The right of the plaintiffs in that case did not depend alone upon their being citizens and taxpayers. While a taxpayer may file a petition to enjoin public authorities, such as a municipal council or the fiscal agents of a county, from misapplying public funds held by them, this rests upon the basis that the public authorities hold such funds in trust, and that the taxpayers are in the nature of beneficiaries of the trust. But it does not follow that every taxpayer is such a beneficiary of a trust created by a deed to individual trustees for the purpose of founding a school as to authorize him to enforce such trust, to enjoin a diversion of it, to have trustees appointed for it, and to exercise supervisory acts in

regard to it. In England the king, as parens patriæ, protected public trusts; and if the superintendence of such a trust was involved, it was necessary for the attorney-general to be made a party on behalf of the crown. Adams' Eq. (8th ed.) *313. In 2 Perry on Trusts (5th ed.), § 744, it is said that if the trustees of a charity abuse the trust the property does not revert to the heirs or legal representative of the donor, unless there is an express condition of the gift that it shall do so; "but the redress is by bill of information by the attorney-general or other person having the right to sue." The author does not, however, enter into a discussion as to what other person has such right. In Chambers *v.* Baptist Educational Society, 40 Ky. (1 B. Mon.), 215, 221, a bequest was made of a fund, the interest of which was to be used exclusively for the education of such Baptist preachers or candidates for the Baptist ministry as adhered to the articles of general union of Baptists in Kentucky. The college for this purpose was located in Georgetown. In the opinion of the court it was said, in reference to the status of the plaintiff (p. 221) : "The charge that he is a Baptist, belonging to the general union of Baptists in Kentucky, resident in Georgetown, and owning property there, will not suffice. The interest, thus derived, is too general, undefined, and remote, to justify his interference." In Hathaway *v.* New Baltimore, etc., 48 Mich. 251 (12 N. W. 186), where money was bequeathed to a village to be employed in the erection of a school building to be used as a high school, and the building was erected, it was held, that a suit in equity would not lie by a taxpayer to compel the village to maintain a high school in the building. In Michigan, however, the statute of 43 Elizabeth, commonly known as the statute of charitable uses, has never been adopted, as held by the Supreme Court of that State. How far this fact may affect the decision referred to need not be discussed.

To authorize the plaintiff to enforce such a trust by proceedings in equity, she must have some pecuniary interest in it, or show that she is a beneficiary who may attend the school herself or send members of her family to it, or in some way avail herself of its educational advantages; and the bare statement that she is a citizen and taxpayer is not sufficient.

6. One of the purposes of the trust declared in the deed of Dorsey and Everett was to build a house or place of worship for the use

of the members of the Methodist Episcopal Church. It is not denied that the plaintiff is such a member of the church which used the building on the lot; and in that capacity she is one of the beneficiaries of the trust. Hullman v. Honcomp, 5 Ohio St. 237; Baptist Church of Lancaster v. Presbyterian Church, 57 Ky. (18 B. Mon.) 635; Brunnenmeyer v. Buhre, 32 Ill. 183 (2); Happy v. Morton, 33 Ill. 398.

7, 8. It is contended by the defendants that if the deed purporting to have been made by the academy trustees and signed by the secretary and president did not convey to the church trustees a perfect title, it at least operated as color of title, and that prescription had ripened under it. If the academy trustees had no title, they could not convey one. They do not appear to have been incorporated; and if they had any title, it was not conveyed by a deed signed merely by one as their president and another as their secretary. Considered from the standpoint of color of title, it could not avail the defendants. Neither the academy trustees nor the church trustees claimed in opposition to the trust created by the deed of the donors, but both of them claimed under it. "The purchaser from a trustee, with notice actual or constructive of the trust, holds as trustee for the beneficiaries." Civil Code, §3179; Baptist Church of Lancaster v. Presbyterian Church, supra.

It appearing that there are no successors to the original trustees lawfully appointed, and that the plaintiff has a status in equity as a beneficiary, it follows that the trustees of the Methodist Church should be enjoined from making the sale, and that the court should appoint trustees to succeed those named in the deed. If the trustees appointed by the quarterly conference have not succeeded to the title of the original trustees appointed by the deed, a sale by them would not convey a perfect title, even if the injunction were denied. They could not convey more than they have. The only way in which a complete title to this land can be made is through a court of equity. The complainant, being a beneficiary, may not be entitled to prevent a sale, if the court deems such a sale advantageous to the trust; but she is entitled to have it take place lawfully, so that a good title will be conveyed and a price be realized based upon such a valid conveyance. There is no indication in the evidence that the church trustees desire knowingly to act wrongfully. They doubtless would not wish to make a sale which would not convey a

good title to the purchasers; and having at heart the best interest of the church and trust, they will no doubt readily perceive the desirability of making a valid sale, if one is made at all. As to whether there shall be a sale or not, and, if there shall be one, what direction shall be given in regard to the fund arising, are questions not now for decision.

*Judgment reversed.    All the Justices concur, except Beck, J., not presiding.*