26604. MILLER v. ALDERHOLD et al.

ARGUED JULY 13, 1971—DECIDED SEPTEMBER 27, 1971.

*Michael Padnos*, for appellant.

*J. Corbett Peek, Jr., William G. Grant*, for appellees.

ALMAND, Chief Justice. The substantial issue before us is whether a group of students enrolled in a private college, incorporated as a charitable corporation under the laws of this State, have standing to challenge certain actions of its board of trustees as constituting breaches of duties to the college and its students.

This issue was made in a class action filed in the Superior Court of DeKalb County by William H. Miller, III, claiming to represent 107 other persons, against Reverend J. Don Alderhold and others individually and as Trustees of Atlanta Baptist College, KPIA Company and Gulfko, Inc.

The complaint alleged, insofar as necessary to recite here, that the trustees have failed and refused to promote the purposes and objectives of the college as defined in its charter, and have breached their duties to it and its students by deliberate acts of malfeasance, misfeasance and nonfeasance relating to its assets, each of which acts was designed to injure the college, the plaintiff and members of his class, all of which were designed to destroy the college as an institution of higher learning by wantonly wasting and deliberately dissipating the college's assets and properties by specified acts. In this connection the complaint further alleged in substance that the trustees have entered

into a contract to sell a substantial portion of the land of the college to the transferor of the corporate defendants; that they have offered to sell the remaining land to the Georgia Baptist Convention; and that they have continued to employ the president, who it is alleged, has destroyed the academic integrity of the college by failing to perform certain acts and by performing stated others.

The prayers of the complaint were, in substance, as follows: That a temporary injunction issue enjoining the trustees from taking any further action adverse to the best interest of the school as to stated matters; that a receiver be appointed to operate the college with responsibility to perform enumerated acts; that the trustees and the corporate defendants show cause why the agreement of sale and lease should not be rescinded; or that the trustees show cause why they should not pay to the college the difference between the amount realized from the transaction with Koger Properties, Inc., and its successors and the fair value of the property; that the corporate defendants be enjoined from further alienation of the property referred to in the deed to them; and for general relief.

To this complaint the individual defendants and the corporate defendants filed separate motions to dismiss and also separate answers which denied the essential allegations of the complaint. The answer of the corporate defendants also sought certain affirmative relief not required to be recited here.

The plaintiff subsequently filed a motion to strike the individual defendants' motion to dismiss for want of particularity.

The plaintiff also moved for a continuance of the hearing upon the defendants' motion to dismiss.

Both of the plaintiff's motions were denied and the case was dismissed. This appeal was then brought.

■ The motion to strike the defendants' motion to dismiss is not meritorious. The motion to dismiss recited that "the complaint fails to state any claim for any relief which can be granted to the plaintiff." This is sufficient particularity.

It conforms to the requirements of the Civil Practice Act. See *Code Ann.* § 81A-112 and the forms set forth in *Code Ann.* § 81A-319.

■ The plaintiff's motion for continuance of the hearing upon the motion to dismiss was properly denied. No abuse of discretion was shown.

■ The trial court was correct in sustaining the motions of the individual and corporate defendants to dismiss the complaints.

The plaintiff and the other students, who allegedly are members of the class, lack the standing necessary to bring this suit. For this reason alone the action cannot be maintained.

It is apparent from the complaint that the plaintiff and the 107 other students of Atlanta Baptist College whom he claims to represent are endeavoring to show that a charitable trust has been created; that the trustees have breached their duties in its administration; and that they as beneficiaries are attempting to enforce the trust.

We cannot agree.

The Atlanta Baptist College is a *private* corporation. Its primary and foremost purpose is the education of people. The relation between the plaintiff student and the college is essentially contractual in character. John B. Stetson University v. Hunt, 88 Fla. 510 (7) (102 S 637); Barker v. Trustees of Bryn Mawr College, 278 Pa. 121 (122 A 220); 15 AmJur2d 604, § 17; 14 CJS 1358, § 24.

In White v. Neff, 52 Ohio St. 375 (40 NE 720, 28 LRA 409), it was said: "In common acceptation colleges are not 'charitable institutions' although in law they administer a public charity. This means no more than that the public are incidentally benefited by the education of some of its members the immediate advantage accruing to the individual members who have received instruction."

"The operation of a private college or university is touched with eleemosynary characteristics. Even though the public has a great interest in seeing these institutions encouraged and supported, they are operated as a private

business." University of Miami v. Militana, 184 S. 2d 701, 704 (Fla.)

Chief Justice Marshall in Trustees of Dartmouth College v. Woodward, 17 U. S. 518, 641 (1819), in discussing the question as to whose benefit the property given to Dartmouth College was secured, said: "Yet a question remains to be considered, of more real difficulty, on which more doubt has been entertained than on all that have been discussed. The founders of the college, at least those whose contributions were in money, have parted with the property bestowed upon it, and their representatives have no interest in that property. The donors of land are equally without interest, so long as the corporation shall exist. Could they be found, they are unaffected by any alteration in its constitution, and probably regardless of its form, or even of its existence. The students are fluctuating, and no individual among our youth has a vested interest in the institution, which can be asserted in a court of justice."

In *Trustees of Martin Institute v. Maddox*, 139 Ga. 491, 493 (77 SE 629), the plaintiffs as residents of Jackson County, but not living in the City of Jefferson, sought to enjoin the Trustees of Martin Institute from charging tuition for their children attending the school so long as free tuition is given pupils residing in the City of Jefferson. This court in holding that the Martin Institute was a private institution said: "By the second item of Mr. Martin's will a bequest of certain stock was given to the trustees of this institution, without restriction as to its use. The trustees were given plenary power over this bequest; they could use it in the construction of buildings, the payment of teachers, or in any way promotive of the general design of the academy. Mr. Martin's generosity was not to the pupils of school age in the County of Jackson, but to a chartered educational institution. This institution was managed by trustees, and his benefaction was to them, to be employed in the management and operation of the academy. *Cumming v. Trustees of Reid Memorial Church*, 64 Ga. 105. No express trust was created for the citizens of Jackson Coun-

ty, and the terse and positive words of the will admit of no such implication. The plaintiffs have no financial interest in the Martin fund, and therefore have no right to interfere with the discretion of the trustees in their use of it in the management and operation of the school."

One attending a private college has no vested financial interest in the institution. As a student he has no standing in court to challenge the act of the trustees or others in the operation and management of the college.

It is inconceivable that one 18-year-old boy or girl the day after his or her admission to a private college could go into court or through the State's Attorneys, and seek to enjoin the trustees in the management and operation of the college, and ask for a receiver solely because he or she was a student. As Chief Justice Marshall said in the Dartmouth College case, supra, "Students are fluctuating and no individual among our youth has a vested interest in the institution which can be asserted in a court of justice."

■ In view of the ruling in Division 3, it is not necessary to rule on the plaintiff's enumeration that the trial court erred in refusing to consider rescission of the sale and lease contract because of mootness.

The rulings of the trial court were correct.

*Judgments affirmed. All the Justices concur, except Grice, Undercofler and Felton, JJ., who concur specially.*

GRICE, Justice, concurring specially. I agree with all that is stated in Divisions 1, 2, and 4. I also agree with the result, but I reach it by a different route.

I have no disagreement with the authorities cited by the majority. None of these involves actions by charitable trust beneficiaries seeking to enforce performance by the trustees of the purpose of the trust.

I disagree with what is stated in Division 3 as to no charitable trust being present here. Such a trust is apparent for several reasons. In view of the importance and possible consequences of this decision upon the law of charitable trusts, I deem it necessary to elaborate somewhat.

The petition for charter of Atlanta Baptist College, Inc.,

clearly manifests a charitable intent or purpose. It alleges, in material part, that the corporation "will be an educational, eleemosynary and religious institution with no capital stock and will not be conducted for pecuniary gain or profit to anyone, but its purpose will be to provide, promote and extend under Christian influence and under Baptist auspices, instruction and education in the arts, sciences and humanities, including theology and the professions, and to encourage and promote research and study in all branches of learning."

Our Code also recognizes this. *Code* § 108-203 provides that "every educational purpose" is a subject of charity for equity jurisdiction. *Code Ann.* § 22-5503 declares that corporations created pursuant to Chapter 22-55 (which includes colleges and universities) "are authorized to act in their corporate capacity as trustees to administer and carry into effect any charitable trust. . ."

The authorities agree that no particular form of words or conduct is necessary to show the intent to create a charitable trust; that one may be created without using the words "trust" or "trustee"; and that the principles and rules governing charitable trusts apply equally to charitable corporations. See in this connection, 15 AmJur2d 11, Charities, § 5; 14 CJS 410, Charities, § 1; Restatement of the Law of Trusts 2d 210, 215, §§ 348, 351 (b); 3 Encyclopedia of Georgia Law 614, Charities, § 2.

In view of the uncertainty as to the identities of beneficiaries of charitable trusts, it is often difficult to determine whether alleged beneficiaries have the capacity to sue for the enforcement of the trusts. However, this court has been lenient in allowing this type of action.

For example, in *Harris v. Brown,* 124 Ga. 310 (52 SE 610, 2 LRA (NS) 828), where a trust had been set up for the erection and maintenance of a school and for a place of worship for the members of a named church, this court stated: "To authorize the plaintiff to enforce such a trust by proceedings in equity, she must have some pecuniary interest in it *or show that she is a beneficiary who may attend*

*the school herself* or send members of her family to it, or in some way avail herself of its educational advantages . . ." (Emphasis supplied). Also, in *Dominy v. Stanley,* 162 Ga. 211 (133 SE 245), the patrons of a school erected and maintained by a charitable trust were recognized as having standing to sue to protect the trust property from sale or diversion.

From the foregoing, it seems clear that the plaintiff and his class are beneficiaries of a charitable trust.

However, for this type of action by beneficiaries of a charitable trust, the General Assembly, since the decisions in the *Harris* (124 Ga. 310), *Dominy* (162 Ga. 211) and other such cases, has authorized and directed that the Attorney General, or appropriate district attorney, shall represent their interests instead of allowing them to file suits to redress what they claim are wrongs of this nature.

In this connection, *Code Ann.* § 108-212 (Ga. L. 1952, p. 121; as amended, Ga. L. 1962, p. 527) provides, insofar as essential here, as follows: "In *all* cases in which the rights of beneficiaries under a charitable trust shall be involved, the Attorney General of the State of Georgia *shall,* in his official capacity, or the [district attorney] of the circuit wherein the major portion of trust res lies, represent the interest of such persons and the interests of the State of Georgia as *parens patriae* in all legal matters pertaining to the administration and disposition of such trusts; and, in this capacity, *he may sue or be sued* . . . Any *judgment* determining rights under any charitable trusts shall be *binding* on the beneficiaries *when* the Attorney General or the [district attorney] of the circuit wherein the major portion of trust res lies is a *party* and is served as herein provided." (Emphasis supplied).

A number of states have enacted similar statutes. Some have not, but rely upon the common law for the same result. See as to this subject: 15 AmJur2d 125 et seq., Charities, §§ 119, 120, 126, 128; 14 CJS 524, Charities, §§ 62 (b), 528, 586; IV Scott on Trusts (2d Ed.) 2753, § 391 et seq; Bogert on Trusts (2d Ed.) § 411 et seq; Anno. 62 ALR 881;

Anno. 124 ALR 1237.

This Georgia statute (*Code Ann.* § 108-212) is broad in scope, declaring that in *all* such cases the Attorney General or district attorney shall act. It is applicable to the class alleged to exist here, the plaintiff and 107 others. They constitute a substantial group of present students, as well as countless other persons who may enroll in the college in the future. Hence, this is not the situation of a "special interest" group, composed of a few students, to which this type statute does not apply, according to some of the foregoing authorities.

Furthermore, this Georgia statute, as we construe it, vests in the Attorney General or the district attorney, as the case may be, sole and exclusive power and duty to represent. There is no mention of any joint or subordinate representation with any other person or persons. Significantly, this statute says that the Attorney General or district attorney shall represent the named interests "as parens patriae." The authorities cited above show that in early English history the King acted as parens patriae for the protection of the interest of beneficiaries of charitable trusts and that it was later that this responsibility was placed upon the English Attorney General, or other legal official. That this function was originally in the King, a sovereign, is indicative that formerly he alone possessed and exercised it, and the reference in our Georgia statute to "parens patriae" clearly manifests its sole and exclusive character.

A quotation from Bogert, Trusts and Trustees (2d Ed.) § 411, p. 324, is fitting here. "The purpose of vesting in some public official like the Attorney General the exclusive power to begin proceedings to enforce charitable trusts is obvious. The persons affected by such trusts are usually some or all of the members of a large shifting class of the public. If any member of this class who deemed himself qualified might begin suit, the trustee would frequently be subjected to unreasonable and vexatious litigation. Often no given individual can prove that he will necessarily benefit from the charity. All may be prospective or possible gain-

ers, but no one a certain recipient of aid. In ultimate analysis it is the public at large which benefits, and not merely the individuals directly assisted. Obviously, there is good reason for vesting in a single authority the discretion and power incident to the enforcement of such trusts, rather than in leaving the matter to the numerous, changing, and uncertain members of the group directly to be aided."

In view of this power and duty being solely and exclusively in the Attorney General, or district attorney, by virtue of our Georgia statute, it follows that the suit here was brought contrary to law and for this reason alone cannot be maintained. Therefore, the complaint does not state a claim for which relief can be granted, and was properly dismissed upon the motions of the defendants.

A different result is not required by *Code Ann.* § 81A-117. That section provides, among other matters, that "no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for . . . joinder or substitution of the real party in interest . . ." That provision is not applicable here. In this situation, the real party in interest is not the Attorney General or district attorney, but the class of beneficiaries, which is required by *Code Ann.* § 108-212, supra, to be represented by the Attorney General or district attorney alone.

Except for the foregoing as to charitable trust and the right of action, I concur in the rulings of all other divisions of the majority opinion.

I am authorized to state that Justice Undercofler and Justice Felton join me in this concurring opinion.