45765, 45766, 45767, 45768. THE CORPORATION OF MERCER UNIVERSITY et al. v. SMITH et al.

(371 SE2d 858)

HUNT, Justice.

This is an appeal from the trial court's order setting aside the merger between Tift College and Mercer University.

The central issue before us is whether Tift is a charitable trust or a nonprofit corporation. The Corporations of Mercer University and Tift College contend the trial court erred by holding that Tift is a charitable trust. The defendants argue that Tift College was a nonprofit corporation within the meaning of the Georgia Nonprofit Corporation Code. OCGA §§ 14-3-3 (b)(4); 14-5-40. As such, they contend Tift had all the powers of nonprofit corporations, including the power to merge with another nonprofit corporation, OCGA § 14-3-170, without court approval.

Tift is a women's college in Forsyth, Georgia, established by an 1849 act of the General Assembly. In recent years, Tift has suffered declining enrollment.[1] In 1986, Mercer University and Tift College entered into a merger agreement[2] which included a provision requiring Mercer to

[m]ake a good faith effort to operate Tift College of Mercer University on Tift's present Forsyth, Georgia campus; however, the preservation of an entity bearing the Tift name for the education of women in a Christian context is paramount.

In December 1986, Mercer decided to close the women's college in

---

[1] Enrollment at Tift had declined steadily for seven years from 489 in 1979 to 236 in 1985.

[2] Mercer University and Tift College are both Baptist institutions affiliated with the Georgia Baptist Convention, which has filed an amicus brief in this case in support of the Tift and Mercer defendants. The Convention has authority to elect trustees to both schools and has provided substantial financial support to both schools. The merger issue was considered at various administrative levels of the Convention and was approved at the Convention's 1986 annual session.

Forsyth and to preserve the Tift entity as part of Mercer University.[3] Subsequently, the plaintiffs (the district attorney of the Flint Judicial Circuit, three former trustees of Tift, a former professor of Tift, an organization called SavTift, Inc., several alumni and donors of Tift College) brought this action to set aside the merger. Named as defendants were the corporate entities of Mercer University and Tift College, their presidents and boards of trustees.

The trial court set aside the merger, holding, inter alia, that Tift College was a charitable trust and, as such, superior court approval — which had not been obtained — was required for the merger; that the Tift trustees failed to exercise proper care in voting for the merger; and that the district attorney had standing to bring this action. In a subsequent order, the trial court appointed a new board of trustees to operate Tift College, and retained jurisdiction of the case for further rulings regarding the operation of Tift College. The defendants appeal.

Both sides in this dispute cite *Miller v. Alderhold*, 228 Ga. 65 (184 SE2d 172) (1971), in which the plaintiffs, a group of students enrolled at Atlanta Baptist College, challenged the sale of land owned by the college. This court affirmed the trial court's dismissal of the action. The majority rejected the plaintiff's argument that the college was a charitable trust and held that it was, instead, a private corporation with its primary purpose being the education of the people. Id. at 67. Three justices concurred specially expressing their view that the college was a trust, but agreed with the result because, in their opinion, only the district attorney had standing to bring the complaint.[4]

We reaffirm the majority holding in *Miller v. Alderhold* that the actions of the directors[5] of nonprofit colleges such as Tift must be

---

[3] Tift faced a number of problems prior to, and leading to the merger. Tift had lowered its entrance standards, but student enrollment continued to decline, and the college suffered a high student attrition rate — about 70% of enrolled students left before graduation. Since about 1975, Tift had depended on outside programs to supplement the income received from its regular students, and had offered night classes, entered into a cooperative program with Brewton-Parker College, offered classes at Macon Correctional Institute, and provided a Department of Corrections course at Jackson. Shortly before the merger, Tift learned that Brewton-Parker and the Department of Corrections would not renew their contracts. Further, because of alumni pressure, Tift discontinued the Macon Correctional Institute program. Tift's vice president of business reported that Tift would not be able to operate without the outside programs and projected that Tift would be operating at a deficit in the 1986-87 school year in the amount of $500,000. In fact, Tift had been operating at a deficit for the two prior years, but monies had been transferred to cover the operating fund deficit from other funds.

[4] Under OCGA § 53-12-79,
. . .the district attorney of the circuit in which the major portion of trust res lies shall represent the interests of the beneficiaries and the interests of this state as parens patriae in all legal matters pertaining to the administration and disposition of such trusts.

[5] The fact that the term "trustee" is used for the Tift directors has no bearing on the

reviewed in light of corporate rather than trust principles.[6] See also *Trustees of Martin Institute v. Maddox*, 139 Ga. 491, 493 (77 SE 629) (1913). Trust principles require court supervision of numerous detailed operations of a trust. The formalities of trust law are inappropriate to the administration of colleges and universities which, in this era, operate as businesses. These institutions hold a wide variety of assets, and those persons responsible for the operation of the institutions need the administrative flexibility to make the many day-to-day decisions affecting the operation of the institution, including those decisions involving the acquisition and sale of assets.

Our holding is consistent with those of most jurisdictions which, in applying corporate rather than trust principles to resolve questions concerning colleges, universities, and other nonprofit corporations, have noted that the functions of the directors of nonprofit corporations are "virtually indistinguishable from those of their 'pure' corporate counterparts." *Stern v. Lucy Webb Hayes Nat. Training School for Deaconesses & Missionaries*, 381 FSupp. 1003 (D.D.C. 1974).

> [T]he traditional trustee is often charged only with the management of the trust funds and can therefore be expected to devote more time and expertise to that task . . . [However] the board members of most large charitable corporations fall within the corporate rather than the trust model, being charged with the operation of ongoing businesses . . . .

Id. at 1013.
As we stated in *Miller v. Alderhold*, citing the courts of Ohio and Florida,

> "[t]he operation of a private college or university is touched with eleemosynary characteristics. Even though the public has a great interest in seeing these institutions encouraged and supported, they are operated as a private business." [Cit.]

Id. at 67.
In light of our holding above, we need not reach the appellants' remaining enumerations.[7] Accordingly, the trial court's orders setting

---

question here. See *Miller v. Alderhold*, supra; *Moore v. Wells*, 212 Ga. 446, 453 (93 SE2d 731) (1956); *Trustees of Martin Institute v. Maddox*, 139 Ga. 491, 493 (77 SE 629) (1913).

[6] Of course the administration of assets held by colleges as trustees under the terms of a specific trust for the benefit of a college or university is subject to trust principles. See *Trammell v. Elliott*, 230 Ga. 841 (199 SE2d 194) (1973); *Duffee v. Jones*, 208 Ga. 639 (68 SE2d 699) (1952).

[7] The trial court found the district attorney had standing under OCGA § 53-12-79, and apparently found the remaining plaintiffs did not have standing. Under our holding, the dis-

aside the merger and appointing new directors of Tift College are reversed, and this case is remanded to the trial court for dismissal.

*Judgment reversed. Marshall, C. J., Smith, and Bell, JJ., Chief Judge A. W. Birdsong, Jr., Judge Arthur W. Fudger and Judge Curtis V. Tillman, concur. Clarke, P. J., Gregory and Weltner, JJ., disqualified.*

DECIDED SEPTEMBER 22, 1988.

*Jones, Cork & Miller, W. Warren Plowden, Hubert C. Lovein, Jr., King & Spalding, Frank C. Jones, Stephanie E. Parker, Hall, Bloch, Garland & Meyer, F. Kennedy Hall,* for Mercer et al.

*Crumbley & Crumbley, Alex Crumbley, Randall A. Meincke,* for Smith et al.

*Morris, Manning & Martin, Richard P. Reinhart, John Franklin Smith, Duvall & McCumber, Thomas O. Duvall, Jr., John David Doverspike, Verner F. Chaffin, Joseph W. Crooks, Mills, Freeman, Vaughn & Sosebee, W. Franklin Freeman, Jr., James A. Vaughn, Hugh D. Sosebee, Jr.,* amici curiae.

---

trict attorney did not have standing and there is no issue remaining regarding the other plaintiffs. See *Miller v. Alderhold,* supra. We also note the record does not support the trial court's conclusion that Mercer breached its agreement to make a good faith effort to operate Tift College of Mercer University on the Forsyth campus. The trial court determined the merger agreement impliedly required Mercer to operate Tift on the Forsyth campus for one year. However, a similar time requirement was deleted from earlier drafts of the agreement. The final agreement contains no time requirement, but emphasizes Mercer's paramount duty to ensure that a Tift entity was preserved, that is, the Tift Fund, "for the education of women in a Christian context." There is no evidence that Mercer violated this provision of the agreement.