ELINOR M. HAMER, a Minor, by Her Father and Next Friend, Paul E. Hamer, Plaintiff-Appellant, v. BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 113, COUNTY OF LAKE, Defendant-Appellee.

Second District   No. 2—84—0981

Opinion filed January 30, 1986.—Rehearing denied February 21, 1986.

Paul E. Hamer, of Northbrook, for appellant.

Bernard J. Nussbaum, Alan S. Gilbert, and Jay Conison, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Elinor M. Hamer, appeals from an order entered by the circuit court of Lake County granting summary judgment in favor of defendant, Board of Education of Township High School District No. 113.

Plaintiff graduated from Deerfield High School—one of the schools governed by defendant—in July of 1978. She was admitted to the only two colleges where she applied and at the time of the trial court's entry of summary judgment on May 23, 1984, was about to graduate from the University of Illinois with a 4.8 grade point average out of a possible 5.0. This case involves events which occurred while plaintiff was a high school student.

On September 19, 1975, plaintiff cut three scheduled classes to accompany a friend who had been subpoenaed to appear at a court hearing. When plaintiff returned to school, a school administrator met her and gave her an opportunity to explain why she had cut the classes. Plaintiff admitted that she left school without obtaining prior permission from school officials. The administrator informed plaintiff that her absences would be considered unexcused absences. School officials also reviewed the matter with plaintiff's parents.

Under a policy in effect at Deerfield High School, a teacher was permitted but not required to reduce a student's quarterly point score up to 3% for each of a student's first three unexcused absences from class. Quarterly point scores are used by teachers to determine a student's quarterly letter grades, which are computed twice a semester. A quarterly letter grade spans a 10% numerical range. For example, a student receives a B if he or she has a point score between 80 and

90. In academic courses, a student's two quarterly letter grades count 40% each toward the final semester letter grade, and a student's semester examination counts 20%. The final semester letter grade is computed by averaging the two quarterly letter grades and the grade received on the semester examination. Final semester letter grades are then used to determine the student's grade point average and class rank. Final semester letter grades are the only grades that appear on a student's official transcript and they alone are the grades disclosed to colleges and prospective employers.

Because of her unexcused absences, plaintiff's quarterly point scores were reduced 3% in the three classes she had cut. Given the grading system at Deerfield High School, a 3% reduction in a quarterly point score often has little or no effect on the student's final semester letter grade. In this case, when plaintiff left school on September 19, 1975, she missed two academic classes and one physical education class. Her final semester letter grades in the two academic classes were not affected by the 3% reduction in her quarterly point scores, and therefore neither plaintiff's grade point average nor class rank was affected. In her physical education course, however, her final semester letter grade was reduced from a B to a C. The record discloses that plaintiff also had another physical education grade reduced from a B to a C because of unauthorized absences unrelated to her absences on September 19, 1975. The grade reductions in physical education had no impact on plaintiff's academic standing, since physical education grades are not taken into account in computing a student's grade point average or class rank.

This lawsuit was originally filed on June 3, 1976. In the original complaint, Paul Hamer, plaintiff's father, named himself and his wife as plaintiffs and class representatives and sought declaratory and injunctive relief, asserting that defendant's policy of permitting quarterly point score reductions for unexcused absences violated various statutory and constitutional provisions. The trial court dismissed the complaint but granted Hamer leave to file an amended complaint.

On September 13, 1976, Hamer filed a first amended complaint, substituting as plaintiff "Elinor M. Hamer, a minor, by her father and next friend, Paul E. Hamer." Unlike the original complaint, the first amended complaint did not contain class action allegations. Plaintiff alleged that because she had missed three classes, "some of the teachers did reduce the grade average of the plaintiff, which reduced the final grade average and affects her class standing ***." She further alleged that the grade reduction could interfere "with later opportunities for higher education and employment for the final grade average

determines the class standing." Plaintiff charged, *inter alia*, that the grade reduction policy (1) deprived her of rights guaranteed by the fourteenth amendment; (2) violated the privileges and immunities clause of the fourteenth amendment; (3) inflicted "a cruel and unusual punishment on the students, particularly those children who had been suspended" in violation of the eighth amendment; (4) subjected suspended students to double jeopardy contrary to both the Illinois and Federal Constitutions; (5) constituted an *ex post facto* law with respect to suspended students; and (6) violated a student's right to an education guaranteed by the Illinois Constitution.

The trial court dismissed the complaint for failure to state a cause of action. On appeal this court reversed. (*Hamer v. Board of Education* (1978), 66 Ill. App. 3d 7.) Although we found most of plaintiff's allegations to be without merit, we concluded that the first amended complaint was sufficient to state a cause of action with respect to whether the grade reduction policy had deprived plaintiff of any due process rights. Defendant sought review of our decision in the supreme court, but its petition for leave to appeal was denied. *Hamer v. Board of Education* (1979), 74 Ill. 2d 586.

After the cause was remanded to the trial court, defendant filed its answer to the first amended complaint. In its answer defendant informed plaintiff that its records showed that she had suffered no reductions in final letter grades in academic courses, and thus her academic standing had not been affected by the challenged policy. Plaintiff then moved to file a supplemental complaint. In her supplemental complaint, plaintiff alleged that her "final course grades" had been reduced for being late to class. In addition, she sought to transform the lawsuit into a class action. The trial court permitted the filing of the supplemental complaint on August 7, 1981. Thereafter, defendant moved to dismiss the allegations relating to tardiness. In support defendant presented an affidavit of Dr. Donald Ring, assistant superintendent of the high school district. Ring stated that he had reviewed plaintiff's school records and found that none of her final letter grades were reduced because she was tardy to class, and her class rank therefore was not affected. Plaintiff responded to defendant's motion to dismiss the allegations concerning tardiness by arguing that a number of her quarterly point scores had been reduced because she was late to class.

After plaintiff filed her supplemental complaint containing class action allegations, she made no effort to obtain class certification. As a result, on April 1, 1982, defendant moved for an order determining that the cause could not be maintained as a class action. Defendant

argued, *inter alia*, that the father-daughter relationship between the class attorney and the class representative constituted an absolute bar to class certification and that plaintiff was not a member of the class sought to be certified since she had suffered no injury.

Plaintiff countered by filing a series of motions. She moved to remove herself as the plaintiff and to substitute Marc and John Austwick as plaintiffs because they had been "more grievously injured by defendant." She also sought to add the individual members of the school board and the district superintendent as additional defendants. Further, plaintiff moved to file a second amended complaint. Unlike the earlier complaints which had requested only declaratory and injunctive relief, the second amended complaint requested compensatory and punitive damages. Finally, plaintiff moved to certify the action, with the Austwicks named as plaintiffs, as a class action. Plaintiff urged that there should be two subclasses, one composed of students currently attending high schools administered by defendant and another of students who had formerly attended high schools administered by defendant.

On May 13, 1982, the trial court (1) ruled that the action could not properly be maintained as a class action; (2) dismissed plaintiff's allegations regarding grade reductions for tardiness; and (3) denied the motions to substitute plaintiffs, to add additional defendants, and to file a second amended complaint. Plaintiff then moved to certify the trial court's order for appellate review pursuant to Supreme Court Rule 308(a) (87 Ill. 2d R. 308(a)). The trial court denied the motion for certification.

Following the May 13 order dismissing that portion of plaintiff's supplemental complaint challenging defendant's policy concerning grade reductions for tardiness, defendant moved for an order awarding costs and expenses under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 41, now Ill. Rev. Stat. 1983, ch. 110, par. 2—611). Defendant contended that the plaintiff's allegation in her supplemental complaint that "the final course grades of the plaintiff were reduced by the defendant for being late to class" was untrue and made without reasonable cause. After hearing arguments, the court granted defendant's motion but awarded only the "nominal" sum of $100.

In March 1983, plaintiff's attorney, Paul Hamer, filed a new lawsuit, again challenging defendant's grade reduction policies. (Austwick v. Board of Education of Township High School District No. 113, 83 CH 184.) Named as plaintiff and class representative was Marc Austwick, whom Hamer had previously tried to substitute as the

plaintiff in the present case. Asserting that plaintiff had taken no action in the present case since September 1982, defendant, on May 11, 1983, moved to dismiss the present action for want of prosecution. Plaintiff responded by moving to consolidate this action with the *Austwick* suit. The trial court denied both the motion to dismiss and the motion to consolidate.

On April 30, 1984, after extensive discovery had been completed, both parties moved for summary judgment. In its motion, defendant sought judgment on two grounds. First, it argued that since none of the plaintiff's final letter grades in academic subjects had been reduced for class cuts, and since her grade point average and class rank had not been affected, plaintiff suffered no legally cognizable injury and therefore lacked standing to sue. Second, it argued that because plaintiff had graduated from high school and, in fact, was about to graduate from the college of her choice, she could not benefit from any injunction restraining the challenged policy. Consequently, it asserted, her claim was moot.

While the summary judgment motions were pending, plaintiff again moved to file a second amended complaint. The second amended complaint renewed several claims that this court found to be without merit in our 1978 opinion. In addition, the complaint contained a number of new allegations, including challenges to the constitutionality of various sections of the School Code pertaining to compulsory attendance of children between the ages of 7 and 16 years of age (Ill. Rev. Stat. 1983, ch. 122, par. 26—1 *et seq.*). Plaintiff also challenged defendant's policy of listing on a student's official transcript the number of days the student was absent with or without authorization. Plaintiff claimed defendant's practice violated her right to privacy guaranteed by article I, section 6, of the Illinois Constitution. Plaintiff's motion to file a second amended complaint was denied by the trial court "without prejudice to being renewed after the Court's ruling upon the pending motions for summary judgment."

On May 23, 1984, the trial court entered summary judgment against the plaintiff. In a lengthy oral opinion, later reduced to a written order, the court concluded that plaintiff lacked standing to maintain this action. The court observed that plaintiff's academic standing had not been affected by the percentage reductions in her grades and that her injury, if any, was *de minimis*. The trial court also found that plaintiff had not been deprived of any due process rights since defendant had afforded her a sufficient opportunity to be heard concerning the reduction in her grades. Additionally, the court determined that plaintiff's claim was moot. Despite concluding that plaintiff's due pro-

cess rights had not been violated, the court nevertheless made a finding that defendant's grade reduction policy violated constitutional guarantees of due process "in failing to provide any written uniform policy *** which would afford an opportunity for hearing in review" to a student charged with unexcused absences. Following the court's ruling, plaintiff did not renew her motion to file a second amended complaint.

■ Plaintiff raises numerous grounds for overturning the trial court's ruling. She first argues that the court erred in finding that she lacked standing to prosecute this action. Plaintiff contends that one need only be aggrieved by a rule or regulation in order to have standing to challenge its constitutionality. Plaintiff claims that this requirement was satisfied in this case since she had two letter grades and two quarterly point scores reduced for unexcused absences.

In order to have standing to maintain an action for declaratory judgment, the party seeking relief must be "interested in the controversy." (Ill. Rev. Stat. 1983, ch. 110, par. 2—701.) As explained in *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76, one must show that the provision in question affected or is capable to affecting some "personal claim, status or right." In this regard, the supreme court has repeatedly held that where a rule or regulation is attacked on constitutional grounds, the party asserting its invalidity must establish that he or she was aggrieved in some manner by its operation. *E.g., Hornof v. Kroger Co.* (1966), 35 Ill. 2d 125, 129; *Schreiber v. County Board of School Trustees* (1964), 31 Ill. 2d 121, 125; *Clark Oil & Refining Corp. v. City of Evanston* (1961), 23 Ill. 2d 48, 49; *Liberty National Bank v. Collins* (1944), 388 Ill. 549, 559.

In this case, plaintiff charged in her first amended complaint that her final grade average was reduced on account of defendant's grade reduction policy. This, she alleged, affected her class standing. While it is true that plaintiff had final letter grades reduced in two physical education courses and quarterly point scores reduced in other classes because of unexcused absences, the uncontradicted evidence presented by defendant established that those reductions had no impact on either plaintiff's final grade average or class rank. Thus, contrary to the allegations contained in her complaint, it is apparent that plaintiff was in no way aggrieved by the grade reduction policy.

Plaintiff claims that even if her injury was only *de minimis*, she nevertheless has standing to prosecute this action. On the contrary, it is well settled that where one alleges a due process deprivation, the injury suffered must be more than *de minimis*. (*Goss v. Lopez* (1975),

419 U.S. 565, 576, 42 L. Ed. 2d 725, 735, 95 S. Ct. 729, 737; *Sniadach v. Family Finance Corp.* (1969), 395 U.S. 337, 342, 23 L. Ed. 2d 349, 354, 89 S. Ct. 1820, 1823 (Harlan, J., concurring).) This was aptly illustrated in *Raymon v. Alvord Independent School District* (5th Cir. 1981), 639 F.2d 257. In that case a high school student had three points deducted from one of her grades because of an unexcused absence. As a result, her grade point average was reduced slightly, but her class standing remained unchanged. In holding that it lacked subject matter jurisdiction, the court stated: "[The student's] claim that the insignificant decrease in her overall grade point average *** constituted a deprivation of a vested property or liberty interest without due process is patently insubstantial." 639 F.2d 257, 258.

Citing *Bigelow v. Virginia* (1975), 421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222, plaintiff contends that the standing requirement need not be satisfied "where there is a penal provision susceptible of being improperly applied." Plaintiff's reliance on *Bigelow* is misplaced. In that case a newspaper editor challenged, on first amendment grounds, the constitutionality of a Virginia statute that made it illegal to sell or circulate any publication which encouraged or prompted the procuring of an abortion. The editor was convicted under the statute after he ran an advertisement for an organization which provided assistance to women who desired to have an abortion. The Virginia Supreme Court affirmed the conviction. Finding that the advertisement was of a purely commercial nature and therefore subject to State regulation, the court held that the editor lacked standing to challenge the statute on the ground that it was facially overbroad. To do so, the court reasoned, would permit the editor to rely on the hypothetical rights of those in the noncommercial zone. The United States Supreme Court reversed, noting:

> "We give a defendant standing to challenge a statute on grounds that it is facially overbroad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute, because of the 'danger of tolerating, *in the area of First Amendment freedoms*, the existence of a penal statute susceptible of sweeping and improper application.' *NAACP v. Button*, 371 U.S. at 433, 9 L. Ed. 2d 405, 83 S. Ct. 328." (Emphasis added.) (421 U.S. 809, 816, 44 L. Ed. 2d 600, 608, 95 S. Ct. 2222, 2230.)

Inasmuch as we are not concerned with any first amendment rights, *Bigelow* clearly has no application in the case at bar.

Because we find that plaintiff has failed to establish that she was in any way aggrieved by the grade reduction policy which she seeks

to invalidate, we hold that the trial court did not err in finding that plaintiff lacked standing to maintain this action.

■ Moreover, given the facts of this case, it is apparent, as the trial court found, that plaintiff's claim is moot. It is elementary that a court will not decide a case "where no actual right or interests of the parties remain or where events occur which render it impossible for the *** court to grant effectual relief to either party ***." (*West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 507. See also *Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184, 189; *Myre v. Board of Education* (1982), 108 Ill. App. 3d 440, 444 (court refused to decide whether a former high school student's substantive due process rights had been violated by an allegedly improper suspension where the student had graduated from high school and had been accepted into a college of her choice).) A court has no authority to decide an issue merely for the sake of establishing a precedent or guiding future litigation. *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 235; *In re Marriage of Wright* (1982), 89 Ill. 2d 498, 500; *West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 507.

■ In this case, the evidence established that plaintiff graduated from Deerfield High School in 1978 and that at the time of the trial court's ruling in May of 1984 was about to graduate with a high grade point average from the college of her choice. Under the circumstances, it cannot reasonably be said that plaintiff has any interest in the outcome of this litigation. Even if she were to prevail on the merits, a judgment in her favor would have no practical effect upon her. At best, it would merely serve as a guide for future cases, a guide which we are not at liberty to provide.

Plaintiff essentially concedes that her claim is moot but argues the issue involved here falls within the public interest exception to the mootness doctrine recognized in *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622. That exception, however, is extremely limited (*Donahue v. City of Chicago* (1982), 107 Ill. App. 3d 271, 274; *In re Johnson* (1977), 53 Ill. App. 3d 921, 924) and should be invoked only in cases involving an "extraordinary degree of public concern and interest" (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 380) and only where the public interest is "very clear" (*People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 164; *Donahue v. City of Chicago* (1982), 107 Ill. App. 3d 271, 274; *Hill v. Murphy* (1973), 14 Ill. App. 3d 668, 670.) We do not believe that the public's interest and concern in the grade reduction policy in question here is of sufficient magnitude as to bring this case within the pur-

view of the public interest exception. Compare, *e.g., In re Estate of Brooks* (1965), 32 Ill. 2d 361 (even though medical treatment had been provided, court addressed the issue of whether an incompetent adult may be judicially compelled to accept treatment which is forbidden by religious conviction); *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618 (court considered "highly sensitive" issue of whether parents can prevent an infant from receiving a needed blood transfusion on religious grounds, even though the infant had received the transfusion); *Environmental Protection Agency v. Pollution Control Board* (1980), 88 Ill. App. 3d 71 (because of the importance of environmental matters to the public health, court reviewed an administrative decision to allow a steel mill to discharge noxious fumes despite the fact that certain regulations had been changed).

■ Based upon the foregoing, we hold that the trial court properly granted summary judgment for defendant. Because the remaining arguments raised by plaintiff—all of which we have carefully considered—would not affect the conclusion we reach here, we find it unnecessary to address those arguments in this opinion. We do, however, reverse the trial court's order entered June 10, 1982, awarding defendant $100 for expenses allegedly incurred as a result of plaintiff's false pleading since there is no evidence in the record to substantiate that defendant, in fact, incurred $100 worth of expenses.

For the reasons stated, we affirm the judgment of the circuit court of Lake County granting summary judgment for defendant but reverse the court's order awarding defendant expenses allegedly incurred as a result of plaintiff's false pleading.

Affirmed in part; reversed in part.

NASH, P.J., and LINDBERG, J., concur.