**AD HOC COMM. OF THE BARUCH BLACK AND HISPANIC ALUMNI ASS'N; Joseph Sellman on behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**BERNARD M. BARUCH COLLEGE; Joel Segall in his official capacity, Defendants.**

**No. 84 Civ. 7236 (RO).**

United States District Court, S.D. New York.

Dec. 15, 1989.

Center for Constitutional Rights, New York City, for plaintiffs; David Cole, Frank Deale, and Michael Ratner, of counsel.

David B. Rigney, Gen. Counsel and Vice Chancellor for Legal Affairs, New York City, for defendants; Kenneth J. Hall, of counsel.

OWEN, District Judge:

Implicit in this case is the question of what responsibility, if any, a college has to its alumni, collectively or individually. Obviously, a college has a contractual duty to

educate its undergraduates who pay to come to it and a duty to treat each student fairly and non-discriminatorily. But upon the departure of a student from its halls of learning, does any legally cognizable duty continue?

Clearly, since many graduates of colleges have formed enduring friendships with classmates and take away fond memories of shared experiences, most colleges generally disseminate an alumni magazine with collected news of alumni "doings," and provide opportunities and facilities for periodic reunions, and colleges are grateful if such old-school ties foster a desire in their graduates to make much-needed gifts to the alma mater. The way the alumni-college relationship is structured or fostered is, however, much varied from college to college. One may have an alumni association with a charter and a dues requirement. Another does not, all matriculants belonging to the association whose operations are funded by the college. Still another may have no association, but a national organization which is a federation of local, city and state clubs.

■ Thus, in the absence of any other factors, it is apparent that, upon graduation, one may no longer look to one's alma mater for other than such things as a transcript of grades as needed. This view of the relationship between a college and its alumni leads me to conclude that, unlike at the undergraduate level, *see Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1971), the First Amendment does not require colleges to fund or recognize alumni groups. Moreover, a college does not unlawfully impede the associational rights of its alumni when it declines to recognize an alumni group. *Cf. Perry*

*Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). However, if a college does involve itself in establishing an alumni relationship structure, it must act non-discriminatorily.

Turning to the parties in this case, defendant Bernard B. Baruch College ("the College"), a branch of the City University of New York, has and recognizes a single alumni association for all graduates of its undergraduate program.[1] It gave permission to that organization to use its name—as to which it has a proprietary interest—and to incorporate under New York State law as the Bernard M. Baruch Alumni Association (BCAA)[2] with a charter and 7000 dues-paying alumni, among whom are many black and Hispanic members, a number of whom have served as its officers, including president.

Plaintiffs Ad Hoc Committee of the Baruch Black and Hispanic Alumni Association ("the Committee") and its Chairman Joseph Sellman have sought and by this action are seeking from defendants Bernard B. Baruch College and Baruch College President Joel Segall official recognition, including the right to use the Baruch name for a corporation it wishes to form under New York State law and thereafter to function as an independent alumni association. This is opposed, the College suggesting that the plaintiffs organize and work within the existing alumni association. Plaintiffs decline this suggestion, observing that without separate recognition, plaintiffs may not command and utilize the College's facilities or resources. Plaintiffs allege under 42 U.S.C. § 1983 that defendants' refusal to grant such recognition amounts to a violation of both the First Amendment to the

1. Like many others, the College restricts access to its facilities and commits certain of its resources to "recognized" groups. Thus, for its alumni association it provides a full-time staff member. A business manager and book-keeper also devote about 40 percent of their time to alumni-related work.

2. The Baruch College Master of Public Administration Alumni Association (MPAA) and the Health Care Administration Alumni Association of Baruch/Mt. Sinai (HCAA) both are graduate school offshoots and therefore serve constituencies different from that of the BCAA. Neither of those alumni groups is separately incorporated with the Bernard B. Baruch College name. Since the College has not recognized any special interest alumni groups of a non-academic nature heretofore, the College's response to the Committee's demands is not a "departure[ ] from the normal procedural sequence," *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1976).

United States Constitution (freedom of speech) and the Fourteenth Amendment (equal protection of the law). Both parties move for summary judgment.

As can be seen, the form of organization for conducting Baruch College's alumni affairs is one of the several forms colleges and/or their alumni have adopted to handle the relationship.[3] While, as observed, these differ in structural approach, one factor is generally common, which is that there is a single umbrella organization, special interest groups existing, if at all, as affiliates within the larger structure. The BCAA is no exception, for its bylaws contemplate the existence of "Constituent Societies, Chapters, and Affiliates," and the record reveals that although black alumni at several other colleges have initiated separate programs, they have done so within the framework of alumni relations established at their respective colleges.

So here, consistent with this perspective on the conduct of alumni affairs as perceived by the Baruch College administrators, they responded encouragingly when they first learned about the existence of the Committee, anticipating that plaintiffs would work within the established framework of the BCAA and, indeed, plaintiffs initially suggested that was how they would proceed. As time passed, however, it became apparent that the Committee's organizers sought to establish a separate alumni entity.

The parties now have reached an impasse. In a nutshell, plaintiffs decline to pursue their interests under the aegis of the BCAA and claim a First Amendment right to the College's name and the use of its resources. In addition, they allege that the College's position is discriminatorily motivated in violation of the Equal Protection Clause. The College, on the other hand, asserts a right to restrict its recognition to the single organization open to all and, denying any unlawful motives, proffers several legitimate justifications for their position.

■ Although I conclude that colleges and universities have no First Amendment obligation to fund or recognize alumni groups, if they do assist any such group the Equal Protection clause precludes them from acting discriminatorily. While asserting that the administration has so acted, plaintiffs have not introduced any evidence of political or racial bias to support an Equal Protection claim.[4] On the contrary, the record indicates that legitimate administrative concerns underlie the College's position and defendants have a constitutionally permissible reason for preferring that plaintiffs conduct their activities through the BCAA. Since the BCAA is a relatively small organization, the College justifiably fears that solicitation efforts by a separate alumni group would unduly burden and possibly alienate alumni. That type of administrative reasoning falls well within the

---

**3.** Although a comparison of Baruch College's alumni system and that of other schools does not have constitutional significance, it is useful in understanding the interests implicated in this case.

**4.** Plaintiffs allege that defendants denied the Committee recognition for the following reasons: 1) defendants' desire to have a single, unified alumni association with a call on its resources and facilities; 2) defendants' view that minority interests would better be served by cooperation within the existing alumni association; 3) defendants' requirement that an alumni group to which it furnishes resources is to restrict itself to alumni relationships and not involve itself in matters relating to College administrative policies or practices; 4) defendants' belief that recognition of the Committee would itself violate equal access and non-discrimination principles; 5) defendants' desire to respect

opposition voiced by members of the BCAA; 6) defendants' belief that the Committee has reasonable alternatives to official recognition. I note in particular with respect to the third ground above that alumni groups have no standing to challenge college policies in a court of law because they lack a concrete interest in those administrative practices. *See, e.g., McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338 (5th Cir.1988). Moreover, after an appropriate inquiry, I am not convinced that any of the foregoing reasons, even accepting truth as alleged, would constitute a showing of political or racial bias requiring the Committee's separate recognition and I conclude that there is no support for any claim that the College was motivated by an "invidious discriminatory purpose." *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1976).

discretion of the College. Moreover, the College has encouraged the Committee's efforts and President Segall's gestures of support make it apparent that the College in no way opposes the communicating and airing of minority views at the alumni level by any group even if critical of the administration.

In sum, the forum for the Committee's agenda already exists: the BCAA. As an affiliate of the BCAA, the Committee would have its appropriate share of access to the goal it seeks: the College's resources. However, plaintiffs have not demonstrated a constitutional basis to require that the College give the Committee the same, but separate, status it gives the BCAA, particularly when, through the BCAA, the Committee can share in the benefits of all. And in any event, the College in no way is restricting the Committee's freedom of speech or right of association regardless of whether it is with or without the assistance of the College.

Accordingly, plaintiffs' motion for summary judgment is denied, and defendants' motion for summary judgment is granted dismissing the complaint.

So ordered.