**Jarboe v. Lebanon Valley College**

2

C.P. of Lebanon County, no. 2002-00202.

*Carl J. Jarboe* and *Abigail E. Jarboe,* pro se.
*Elizabeth F. Walker,* for defendants.

FEUDALE, *S.J.,* October 15, 2003—Before the court are preliminary objections filed on behalf of Lebanon Valley College, its president, David Pollick, and other employees, to a fifth amended complaint filed by pro se plaintiffs, Dr. Carl Jarboe and his wife, Abigail. The complaint sets forth counts of breach of contract, defamation, a request for declaratory judgment, allegations of

denial or interference with basic human rights as to various First Amendment and related issues, and a request for temporary and permanent injunctive relief.

While the complaint is somewhat inartfully pled, it appears that Dr. Carl Jarboe, who graduated from Lebanon Valley College in 1961, along with his wife, are being denied access to the campus of the college. Additionally, Dr. Jarboe's "alumni status" has been allegedly terminated, or at least all mailings relevant thereto have been discontinued. While the genesis of these actions is somewhat unclear, plaintiffs, who this court, due to its prior involvement with the plaintiffs in several other pro se lawsuits (*i.e.,* involving a local judge, and lawyer) would describe as gadflys,[1] have, depending on one's point of view, unorthodox views on political and religious issues.

In any event, the basis for this lawsuit are letters from President Pollick dated May 2, 2000, April 20, 2001 and April 23, 2001 which provide as follows:

(1) May 2, 2000

Mr. Carl Jarboe

416 Maple Street

Lebanon, PA 17046

Mr. Jarboe:

It is fundamental to the nature of a college community and its mission that there be an open and civil exchange of ideas. This is a principle that allows no compromise. Ideas that we may disagree with are allowed within the library in order to test their strength and reveal their flaws. As

---

1. A person(s) who stimulates or annoys especially by persistent criticism. Merrian Webster 11th Collegiate Dictionary.

such, a college permits a wide range of materials to be available to students for their consideration and analysis.

Further, in the course of examining ideas, inside and outside of the classroom, students and faculty must be permitted the comfort and security provided by the basic rules of civility. Persons are never to be confronted or demeaned for positions they hold. And since students both live and study within a college community, they must feel free to move throughout the campus without fear of being verbally accosted for their ideas.

You have shown on a number of occasions that you do not share these fundamental principles of the college. On numerous occasions you have removed stacks of published documents from our Student Center without permission. By so doing, you are attempting to thwart the free exchange of ideas. You have been known to confront students on our campus outside of any structured or formal educational program regarding their personal opinions. By so doing, you have violated the rules of civility that guide the college.

For these reasons, you are no longer permitted on the campus of Lebanon Valley College. If you are found on campus, campus security will escort you from the premises and a report of trespass will be registered with the local police.

Respectfully,

/s/G. David Pollick

G. David Pollick

President

cc: Chief Richard Miller

Mr. Al Yingst

Mr. Greg Slanson
Dr. Robert Hamilton
(2) April 20, 2001
Ms. Abigail Jarboe
416 Maple Street
Lebanon, PA 17042

Dear Ms. Jarboe:

I am in receipt of your letter of April 19, 2001.

I cannot grant your request to use Lebanon Valley College's facilities for the purposes of conducting Bible study. As you know, the college has a full-time chaplain who conducts religious services for our community and provides a wide range of additional services to assist our students and staff with their spiritual needs.

While I appreciate your concern for your husband, I have already conducted the college's business with him directly and will continue to do so, whenever it is appropriate.

Regarding your allegation that you have been harassed on our campus, the security account of the encounter is quite to the contrary. Conversation is not harassment, particularly when it is directed to a person who is on our campus without clear and identifiable business. And your understanding of the nature of public access to a private campus is not complete. Persons are welcome to attend events that are announced as open to the public, as long as they abide by the rules of civility and conduct that govern each event. We do not permit persons to simply roam around our campus, going in and out of buildings, without any identifiable purpose. You have no right to do this. And, as you know, we do not permit persons to

obstruct our educational mission through direct conduct with our students or by removing published materials in order to prevent others from assessing opinions you do not share. If these behaviors were to continue, it would be necessary for the college to take the appropriate action.

And on a single point we are strongly in agreement, I will continue to insist that our security conduct themselves professionally and responsibly, as they have done in all of their dealings with you.

Respectfully,

/s/G. David Pollick

G. David Pollick

President

cc: Dr. Robert Hamilton

(3) April 23, 2001

Ms. Abigail Jarboe

416 Maple Street

Lebanon, PA 17042

Ms. Jarboe:

It has become quite clear that your discomfort with the mission of Lebanon Valley College as an institution of higher education is causing you a great amount of stress and discomfort. Your conduct with the guests and students of our campus has become increasingly detrimental to our ability to conduct our business in a reasonable and civil manner. You are, therefore, no longer welcome on the campus of Lebanon Valley College. Should you be found on the premises, campus security has been informed to escort you from our property. Should you resist and/or persist in trespassing, the matter will be turned over to the local police.

Respectfully,
/s/G. David Pollick
G. David Pollick
President
cc: Dr. Robert Hamilton
Mr. Al Yingst
Chief Richard Miller

In any event, subsequent to one or more of the aforesaid letters, Dr. and Mrs. Jarboe filed the present cause of action with the fifth amended complaint being dated on May 12, 2003. Argument on the preliminary objections was held on August 19, 2003.

As indicated in defendant's brief, there appears to be no Pennsylvania cases to date on the issue of standing of an alumnus to sue their alma mater for its current *policies.* However, defendant did cite cases from New York and Connecticut which found that in the *absence of any other factors* upon graduation, one may no longer look to one's alma mater for other than such things as a transcript of grades as needed. As the court stated in the case of *Steeneck v. University of Bridgeport,* 1994 Conn. Super. Ct.:

"The issue of whether alumni have standing to challenge the actions of their alma mater has not been addressed by our Connecticut courts. However, in an action by alumnae who alleged that Yale University's procedures for treating sexual harassment violated title IX, the Second Circuit Court of Appeals found that 'graduation has mooted their claims for grievance procedures.' *Alexander v. Yale University,* 631 F.2d 178, 185 (2d Cir. 1980). In an action brought by alumni alleging

8

that a college selectively refused to grant recognition to an alumni association dedicated to the concerns of minority students, another federal court noted that—'in the absence of any other factors, it is apparent that, upon graduation, one may no longer look to one's alma mater for other than such things as a transcript of grades as needed.' *Ad hoc Committee v. Bernard M. Baruch College,* 726 F. Supp. 522, 523 (S.D.N.Y. 1989); see also, *Hamer v. Board of Education,* 140 Ill. App. 3d 308, 488 N.E.2d 1096, 1102, 94 Ill. Dec. 849 (Ill. App. Ct. 1986) (when former high school student brought action to challenge grade policy, court said since she suffered no injury, claim was moot); *Corporation of Mercer University v. Smith,* 258 Ga. 509, 371 S.E.2d 858 (Ga. 1988) (finding alumni, former trustees, former professor, district attorney, and donor had no standing to bring action to set aside merger).

" '[A] college [only] has a contractual duty to educate its undergraduates . . . and a duty to treat each student fairly and non-discriminatorily.' *Ad hoc Committee v. Bernard M. Baruch College, supra,* 726 F. Supp. 522-23. In the present case, the plaintiff alumni have already received their degrees, and the injuries they have allegedly suffered due to UB's alleged loss of academic reputation fall within the 'impermissible realm of general speculation about unproven hypothetical situations.' *Maloney v. Pac, supra,* 183 Conn. 322. Having failed to demonstrate aggrievement the alumni plaintiffs are without standing to bring the present action."

## DISCUSSION

No citations are necessary in considering a motion to dismiss based on a failure to state a claim. The law provides that a court shall not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims and it appears beyond doubt that the plaintiffs can prove no set of facts in support of any of their claims which will entitle them to relief.

In our view, although inartfully pled, this case presents us with the difficult question of whether portions of an obviously well intended letter from the president of a university can withstand First Amendment scrutiny.

Simply stated, plaintiffs' motion for preliminary injunction (which was not addressed at the argument) and defendants' motion to dismiss are inextricably intertwined. If plaintiffs are able to establish a substantial likelihood of success on the merits, then defendants' motion to dismiss must be denied inasmuch as it seeks to dismiss all of the counts of the fifth amended complaint. For this reason, the scope of our analysis shall be limited. If we find that plaintiffs have evidenced a likelihood of success on the merits, defendants' argument that the count should be dismissed because the plaintiffs have failed to set forth facts sufficient to support their claims, will be rejected.

In summary form, plaintiffs' complaint challenges the constitutional validity of a writing that they claim impacts their and arguably the students' First Amendment rights to free speech, free association and freedom of religion.

Against this backdrop we must also determine whether the president of Lebanon Valley College should be enjoined from enforcing provisions in his letter which impliedly were mailed with the noble purpose of making Lebanon Valley College a better place to live and learn.

The court is also aware, however, that "if there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what will be orthodox in politics, nationalism, religion, or matters of opinion, or force citizens to confess by word or act their faith therein." *West Virginia Board of Education v. Barnette,* 319 U.S. 624, 642 (1943).

On the other hand, we also agree that the expression of one's belief should be communicated in a manner that does not provoke, harass, intimidate, or harm another, regardless of one's strongly-held beliefs.

It should be noted, however, that an important guidepost is that "the Supreme Court has held time and again, both within and outside of the school context, that the mere fact that someone might take offense of the content of speech is not sufficient justification for prohibiting it." *Saxe* 240 F.3d 215 (citing *Tinker,* 393 U.S. 509; *Texas v. Johnson,* 491 U.S. 397, 414 (1989)); *Street v. New York,* 394 U.S. 576, 592 (1969); *Doe v. University of Michigan,* 721 F. Supp. 852, 863 (E.D. 1989); see also, *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 414 (1992) "the mere fact that expressive activity causes hurt feelings, offense, or resentment does not render the expression unprotected;" *Sypniewski,* 307 F.3d 264-65. Thus, regulations that prohibit speech on the basis of listener reaction alone are unconstitutional both in the public high school and university settings.

Clearly, the tone of the letter from President Pollick supports an open and civil exchange of ideas. However, we are unsure without further discovery about the nature and extent of his assertions as to "confrontation," "demeaned," "verbally accosted" and "thwarting the free exchange of ideas." Also, we are uncertain about the reference to the "rules of civility that guide the college." We would note that simply utilizing buzzwords without more content does not illuminate our inquiry.

Similarly, the assertion from a later letter from President Pollick that "conversation is not harassment" seems to be, in part, the point the Jarboes are making.

We believe that the concept of prohibiting communications which "confront" suggests that a person's beliefs (be they alumni or student), should not be communicated in a way that arouses interest and stimulates a response needs to be reviewed. In our view, any such limitation should be carefully analyzed. Aside from the constitutional concerns of any such prohibition, it is worth noting that such a view is inconsistent with our nation's tradition of safeguarding "free and unfettered interplay of competing views" in the academic arena. *Doe v. Michigan,* 721 F. Supp. 852, 864 (1989); see also, *Keyishian v. Board of Regions,* 385 U.S. 589, 603 (1967); *Sweezy v. New Hampshire,* 354 U.S. 234, 250 (1957). Communications which provoke a response, especially in a university setting, have historically been deemed an objective to be sought after rather than a detriment to be avoided. To illustrate, our recollection of the Socratic method used by our professors in law school was one where we were challenged with systematic doubt and confrontational questioning. Such also occurred between

peers, in a less structured and informal setting. While at the time the "give and take" was unnerving, and to some even perceived as a harassing event (when employed by a "Professor Kingsfield" type character). Such was ultimately a positive learning experience.

Despite such a salutary objective, by comparison, one of plaintiffs' exhibits to their complaint seems to indicate that plaintiff Abigail Jarboe, who was a write-in candidate for the 101st District seat, was prohibited from participating in a candidate's forum at Lebanon Valley College, presumably because of the president's letter of exclusion. If correct, such a prohibition is troublesome and contrary to our democratic ideals.

Finally, in consideration of the foregoing observations that communications which provoke a reasonable and rational response, whether in the university or court setting have a rational basis, we tender the following proposal. Rather than engage in what could be a lengthy and costly proceeding to all concerned,[2] we, pursuant to our discretion set forth in Pa.R.C.P. 212.3, direct that Dr. and Mrs. Jarboe, as well as President Pollick and his counsel, appear at a pretrial conference to review the six criteria set forth,[3] as well as explore any possible amicable resolution to this matter.

---

2. We would note that plaintiffs filed their many amended complaints without leave of court and we had to stay the filing of any further complaints to reach this juncture of proceeding.

3. (a) In any action the court, of its own motion or on motion of any party, may direct the attorneys for the parties to appear for a conference to consider:

(1) The simplification of issues;

(2) The necessity or desirability of amendments to the pleadings;

In the interim, we are confident that our holding today will not have a deleterious affect upon the ability of the administration to properly regulate conduct at Lebanon Valley College. In our view, the criminal laws of the Commonwealth of Pennsylvania, local ordinances, and applicable federal and state anti-discrimination laws all combine to provide adequate safeguards. In consideration of the foregoing, we enter the following:

## ORDER

And now, October 15, 2003, defendants' preliminary objections are denied, an answer shall be filed within 20 days of service of this order, and a pretrial conference pursuant to Pa.R.C.P. 212.3 is scheduled for November 4, 2003 at 1 p.m. in courtroom no. 1 of Lebanon County Courthouse and we direct both pro se plaintiffs, President Pollick and counsel to be present at said conference.

-----

(3) The possibility of obtaining admission of fact and of documents which will avoid unnecessary proof;

(4) The limitation of the number of expert witnesses;

(5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;

(6) Such other matters as may aid in the disposition of the action.