Mamo J. Camello, J.
The court will first at this time deny the motion of the defendants to dismiss the plaintiffs’ complaint made at the end of the plaintiffs ’ case.
The decision of the court is as follows:
Plaintiffs commenced an action for a permanent injunction to compel the defendants, administrators and members qf the faculty of Queens College to comply with the resolution of the. Board of Higher Education dated May 10, 1970, by conducting the classes regularly scheduled. The instant application came on by a motion for a temporary injunction. The Corporation Counsel appeared on behalf of each of the named defendants.
The court finds that this application should properly have been an article 78 proceeding in the nature of mandamus to compel the defendant officials to perform certain acts. Under the circumstances, the court deemed the action to be such proceeding under the authority of CPLR 103 (subd. [c]). (Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400.)
As it appeared to the court on the argument of this matter that there are serious factual questions, and time being of the essence in this matter, the court held an immediate hearing. (CPLR 7804, subd. [g] ; 410.)
It appears that because of certain demands and/or disruptions by a portion of the student body on the campus of Queens College, that institution was .closed on May 6 and 7, 1970. Appar *25 ently there was some serious question as to when the regular classes of instruction would continue in the City University and Queens College, in particular. By a resolution of the Board of Higher Education dated May 10, 1970, that body determined: ‘ ‘ That the Board of Higher Education states that it is the duty of the City University to remain open in order to continue to offer instruction to the students enrolled in the University;
“ That faculties have the responsibility to meet with and teach their students in order to pursue the academic mission of their colleges. Colleges may adjust their programs of courses, attendance, examinations and grading as in their judgment may seem necessary and appropriate.
“ That letter grades will be given to students who request them and that no student may be granted a passing grade for a course unless'in the judgment of the instructor he has met the standards of that course.”
By two letters dated May 11, 1970, the president of Queens College indicated that in addition to the regular course of studies seminars would be offered dealing with subjects of current political interest on the campus. He further indicated that there would be a modification in the grading system, although students were still given the right to elect letter grades.
By a letter dated May 12, 1970, the dean of the faculty of Queens College restated the administration’s position with regard to the procedure on grades and generally stated that, by reason of the Board of Higher Education’s resolution, faculty members had the responsibility to meet with and teach their students.
Plaintiffs contend that in many instances the faculty discontinued the course of study and either suggested that the students attend the several seminars or it conducted such seminars in place of the regular curriculum.
The defendants, in reply, contend that students have the right to bring such grievances before the respective departmental chairmen and also the Committee on Scholastic Standards, referring particularly to the provisions of the letter of May 12, 1970.
The court notes in that regard that the provision in said letter specifically deals with grade complaints and does not indicate that this course should also be followed where an instructor might terminate the course of study. Assuming, without deciding, that either procedure is an administrative remedy which the students would otherwise be required to pursue before bringing this proceeding, the court notes that, pursuant to the Queens *26 College catalogue, regular classes are to terminate on May 23, 1970, and the scholastic year would end June 6, 1970.
Inasmuch as the evidence is unclear as to the time such administrative procedures would entail, and since the dean of the faculty testified that it could take as long as three weeks, it appears to the court that such administrative remedies, because of the time factor, would be futile and, under the circumstances, should not be a bar to the present court proceeding.
It appears to the court that the principal question is whether or not the defendants have complied with the directive of the Board of Higher Education dated May 10, 1970. Clearly sections 6201 and 6202 of the Education Law give the Board of Higher Education the sole and exclusive power for the running and maintenance of the university. Under such power, the board issued its May 10th resolution.
It is the function of the president of any branch of the university, as the executive agent of the board, to enforce and carry out its by-laws and resolutions. (By-laws of the Board of Higher Education of the City of New York, par. 7.4.) Apparently the president of Queens College interpreted the portion of the resolution providing that the college may adjust its program of courses to mean that the college might introduce new courses in the place and stead of existing curriculum.
The court notes at this time that generally it will not interfere with the exercise of administrative discretion vested with the administrators in charge of the educational institution. However, where there is no scope for the use of that discretion, the court may find that the administrator has exceeded his authority. (Matter of Lesser v. Board of Educ. of City of N. Y., 18 A D 2d 388, 390.)
The court finds here that there was no discretion in the administration of Queens College as to whether or not to continue the regular course of study. The resolution of the board is clear that the City University must remain open in order to offer instruction to its students and that the faculty had the responsibility to meet with and teach these students.
The court does not believe that this directive is susceptible of any interpretation other than that the university will offer to these students a continuation of the courses and curriculum which they started in the beginning of the semester. While the discretion granted to the president might allow him to introduce other .courses or even workshops to fulfill the need that he finds present in the demands of the students, under no circumstances is that discretion so broad as to allow those other courses or *27 workshops to interfere with the completion of the courses begun in the beginning of the semester.
The court finds as a fact that the administration did not comply with the afore-mentioned directive in that it permitted seminars in many instances to be conducted at the same time and in the same place as regularly scheduled classes.
Further, upon a review of the description of the regular classes, as set forth in the catalogue of Queens College, and from the testimony of the administrators who appeared as witnesses, the court finds that the subject matter of these seminars or workshops could in no way be found to be an integral part of or related to the courses of study originally scheduled at those times and in. those rooms.
Further, the court finds that in the instances where the plaintiffs sought to meet with faculty members or departmental chairmen, oftentimes they were unable to locate either.
Further, the court finds that there has been no major disturbance on the campus since May 10, 1970, so as to justify the discontinuance of the regular classes scheduled.
Inasmuch as the evidence is inconclusive as to whether this situation existed with regard to all or a substantial part of the course curriculum offered at Queens College, the court does not believe that its decision can go beyond the courses in which the present plaintiffs are involved. Under the circumstances, the defendants are directed to offer to plaintiffs the completion of the course of studies in the following list of classes in which the evidence has indicated the defendants have failed to meet their obligations under the resolution of May 10, 1970.
As to plaintiff DeVito, the court finds these courses: Physics 2, Square Dancing, Physical Education (restricted course).
As to plaintiff Zurl: Square Dancing.
As to plaintiff Kleim: English 3, Anthropology, French 1 and Art 7.
Further, the court directs that the defendants, pursuant to the directions of the board, permit plaintiffs to elect whether they will receive letter grades in these courses or, in the alternative, to elect any other grading system offered to the student body in general. Such election should be made upon the completion of the regular course of study.
The court finds that the rulings of the administration with regard to attendance, final examinations and grades are generally in conformity with the resolution and the prior practices at Queens College and, accordingly, makes no disposition in that regard.
Submit judgment and order.
*28 Are there any further proceedings on the part of, first, the attorney for the plaintiffs?
‘ ‘ mb. babón : I have none at this time, sir.
1 ‘ the court : On the part of the defendants 1 “ mr. muskin : None, your Honor.
“ the court: All right, that is the decision of the Court.”